[No. 34412.   Department One.   April 3, 1958.]

# H. C. HANSON, *Appellant*, v. PUGET SOUND NAVIGATION COMPANY, *Respondent*.[1]

[1]Reported in 323 P. (2d) 655.

*Clarke, Clarke, Albertson & Bovingdon,* for appellant.

*Bogle, Bogle & Gates,* for respondent.

OTT, J.—The Puget Sound Navigation Company, acting through its president, Captain Peabody, offered for sale the ferryboat "S. S. Malahat." H. C. Hanson, a naval architect and marine surveyor, was approached by Captain Peabody as a possible purchaser or one who, because of his contacts, might be able to sell the ferryboat. Mr. Hanson, however, was not a broker.

An agreement was reached whereby Hanson would attempt to sell the "Malahat" for a net sum to the company of fifty thousand dollars, and any sum in excess thereof for which the boat was sold would be returned to Hanson as payment for his services. Hanson's asking price was sixty thousand dollars. When no sale was effected upon this basis, Captain Peabody reduced the price to twenty-five thousand dollars net, the provisions as to Hanson's pay remaining the same. Hanson then quoted a sale price of thirty-five thousand dollars to his prospective purchasers.

Being unable to sell the boat at the latter price, and having been informed that the boat had been offered for twenty thousand dollars, Hanson called Captain Peabody and informed him that he could not sell the boat at the price suggested, and that he was abandoning any further efforts to do so. Captain Peabody then reduced the sale price to twenty thousand dollars and confirmed the offer in writing, as follows: "February 14, 1956   Agreed purchase price of vessel MALAHAT $20,000.00"

Thereafter, Hanson obtained a buyer who was willing to pay twenty-five thousand dollars. The prospective purchaser, Mr. Schwartz, and Mr. Hanson met with Captain Peabody in the company's office for the purpose of closing the sale. The twenty-five-thousand-dollar check signed by

Schwartz and made payable to Hanson was, at the request of Captain Peabody, endorsed by Hanson, delivered to and accepted by Captain Peabody. Captain Peabody thereupon executed and delivered to Hanson a check for five thousand dollars, and delivered a bill of sale for the "S. S. Malahat" to Mr. Schwartz. Shortly after the departure of Hanson and Schwartz from the office, Captain Peabody deposited the twenty-five-thousand-dollar check in the company account and stopped payment on the five-thousand-dollar check made payable to Hanson.

H. C. Hanson commenced this action against the navigation company, alleging the execution of the check; that it was given for a valuable consideration, and that payment had been denied upon presentation. The answer admitted the execution of the check, but denied that it was executed for a valuable consideration and, by way of an affirmative defense, alleged that the check was executed and delivered under a mistake of fact. Plaintiff's reply denied the affirmative matters pleaded. The cause was tried to the court. During the trial, the defendant tendered into court twelve hundred fifty dollars, being the amount it admitted was due the plaintiff, on a *quantum meruit* basis, as a reasonable broker's commission.

The trial court found that the original arrangement, whereby Hanson was to receive for his services the difference between the sales price and the amount asked by Captain Peabody, had been terminated, and that Hanson was entitled, on the *quantum meruit* theory, to a reasonable broker's commission in the sum of twelve hundred fifty dollars.

Judgment was entered accordingly, and the plaintiff has appealed.

Appellant contends that neither the evidence nor any reasonable inference therefrom establishes that the parties abandoned the original agreement whereby Hanson was authorized to retain for his services any amount over and above the price asked by the company. With this contention, we agree.

It is admitted, in the instant case, that the offered prices of fifty thousand dollars and twenty-five thousand dollars, respectively, were upon the basis that such amount would be net to the company, the excess to be retained by Hanson. There is nothing in the record which indicates that there was to be any modification of this agreement by the subsequent offer to sell for twenty thousand dollars net. Captain Peabody's conduct, in executing and delivering the five-thousand-dollar check to Hanson after all of the facts of the sale were evident, was in conformity with the previous agreement of the parties, and was inconsistent with any implied modification thereof.

An implied modification of a contract arises out of the intention of the parties and, like an express contract, requires a meeting of the minds. *Milone & Tucci, Inc. v. Bona Fide Builders*, 49 Wn. (2d) 363, 301 P. (2d) 759 (1956). The burden was upon the respondent to establish that the original agreement was mutually modified. 17 C. J. S. 1229, § 588. See, also, *Poston v. Western Dairy Products Co.*, 179 Wash. 73, 36 P. (2d) 65 (1934). The respondent failed to meet this burden.

Respondent pleaded the defense of mistake of fact, relying upon the contention that Captain Peabody reduced the sale price of the "Malahat" to twenty thousand dollars upon the representation that Hanson could not sell it for twenty-five thousand dollars, when, in fact, at that time he had a firm offer to purchase for twenty-five thousand dollars. Even though we were to assume that such a contention would sustain the plea of mistake of fact, no testimony was offered by the respondent to establish it. Mr. Schwartz was not called as a witness. Hanson's testimony was that the Schwartz offer to buy the "Malahat" was not made until after the respondent had reduced its sale price.

Respondent's position is untenable for an additional reason. At the time the parties met in the office of Captain Peabody to complete the sale, the respondent was fully informed as to the amount that Schwartz was paying for the boat, and of Hanson's understanding that respondent was

to receive twenty thousand dollars net, and that he (Hanson) was to receive the balance for his services. By Captain Peabody's silence and failure to object, there was a complete and unqualified acceptance of the sale arrangement upon Hanson's terms.

In *Freimuth v. Glens Falls Ins. Co.*, 50 Wn. (2d) 621, 626, 314 P. (2d) 468 (1957), we adopted the rule announced in 1 Williston on Contracts (Rev. ed.) 286, § 91C, as follows:

" 'The offeree may authorize the offeror to regard silence as an acceptance of his offer. Such authorization is not likely to be given in express terms, but the conduct of the offeree in previous dealings or in earlier stages of the existing negotiation may have justified the offeror in understanding silence as assent. If he does so understand there is a contract.' "

Applying this rule to the instant case, Captain Peabody, by his silence, unqualifiedly accepted Hanson's terms with regard to the sale of the "Malahat," and a binding contract resulted. *Milone & Tucci, Inc. v. Bona Fide Builders, supra.*

The trial court erred in failing to apply the foregoing rule of law.

The judgment is modified, and the cause remanded with instructions to enter judgment in favor of the apppellant in the sum of five thousand dollars.

HILL, C. J., MALLERY, FINLEY, and HUNTER, JJ., concur.