[No. 46976–8.   En Banc.   December 31, 1980.]

MARY R. WAGNER, *Petitioner*, v. G. CORYDON WAGNER, *Respondent*.

*Helsell, Fetterman, Martin, Todd & Hokanson,* by
*Richard S. White, Rosselle Pekelis,* and *Linda J. Cochran,*
for petitioner.

*Davis, Wright, Todd, Riese & Jones,* by *Michael R.
Green* and *Sally E. Mathiason,* for respondent.

STAFFORD, J.—This case involves a postdissolution proceeding requiring the construction of two provisions of a separation agreement.

Mary and Corydon Wagner were divorced in 1972 after 22 years of marriage. A detailed separation agreement reached after extensive negotiation was confirmed by the trial court. The agreement divided nearly $1,000,000 of community property approximately equally. Mr. Wagner retained his extensive separate property which consisted mainly of interests in family–owned timber companies. The agreement also provided Mrs. Wagner would receive a gradually decreasing amount of alimony which was to level off in 1977 at $5,745 quarterly "for the life of the plaintiff". This was to terminate if Mrs. Wagner remarried. Both alimony and child support provisions were expressly made "subject to modification from time to time by the court, as the conditions of the parties may warrant". All other provisions were made final and binding.

The separation agreement also provided for disposition of the parties' rights to the family residence. It gave Mrs. Wagner a right to occupy the home as her residence until August 31, 1977. It also provided that if the home was not sold by August 31, 1977, Mr. Wagner had an option to purchase Mrs. Wagner's one–half interest in the property for $87,500 (one half of the appraised value in 1969) within 60 days after August 31, 1977.

Beginning in 1974, the Wagners attempted to sell the residence for as much as $585,000, both through local real estate agents and through Previews, a nationwide agency specializing in luxury homes. The listing agreement with Previews required a $10,000 retainer plus a commission upon sale. The cost of the retainer was borne by the Wagners equally. The Previews agreement lasted until December of 1977, 3 months after Mr. Wagner's option was to ripen. Mrs. Wagner continued to occupy the home despite extensive traveling.

In September 1977, Mr. Wagner attempted to exercise his option to purchase Mrs. Wagner's half interest for

$87,500, which Mrs. Wagner resisted. Mr. Wagner countered with a suit to enforce his option and to terminate Mrs. Wagner's alimony. By mutual agreement the home was finally sold in 1978 for $300,000.

The trial court terminated the alimony payments with the oral observation that normally courts do not grant wives alimony for life. The trial judge based his action on the agreement of the parties, saying:

> Now, "and are subject to modification from time to time by the court . . ." and that is what I am asked to do here, modification, elimination, "as the conditions of the parties may warrant." Not upon a substantial change of circumstances, not on change of circumstances, but as the conditions of the parties may warrant.

He found Mrs. Wagner's net worth, exclusive of jewelry, furs and antiques, could produce an annual tax free income of $37,500. Consequently, it was concluded her condition did not warrant further alimony.

Concerning the house, the court held the option provision was ambiguous; that Mr. Wagner was estopped from exercising and had waived his right to exercise the option; that by working together to sell the house and by signing the Previews listing agreement, the parties had deferred the time of the option; and that Mr. Wagner's attempt to exercise the option was premature.

The Court of Appeals affirmed. As to the alimony it held there were substantial changes in circumstances and further that the terms of the settlement agreement made it unnecessary to determine whether the changes that occurred were or were not within the contemplation of the parties at the time of making the agreement, citing *Smith v. Smith,* 13 Wn. App. 585, 536 P.2d 179 (1975). In dealing with the claimed option, it agreed with the trial court that the provision was ambiguous on its face, and found the parties' course of performance in attempting to sell the property resolved the ambiguity. It also held the parties had become bound to sell and divide the proceeds equally because of

the listing agreement, causing Mr. Wagner to lose his option. We reverse the Court of Appeals on both issues.

## I
### MODIFICATION OF ALIMONY

█ Normally, in the absence of anything in the separation agreement to the contrary, alimony may be modified by a court only upon the showing of a substantial change of circumstances that was not within the contemplation of the parties at the time the decree was entered. *Lambert v. Lambert,* 66 Wn.2d 503, 508–10, 403 P.2d 664 (1965); *Crosetto v. Crosetto,* 65 Wn.2d 366, 397 P.2d 418 (1964). This judicial overlay was added to RCW 26.08.110[1] which provided that alimony "may be modified . . . by the court from time to time as circumstances may require."

Neither the trial court nor the Court of Appeals found the existence of a substantial change of circumstances which was not within the contemplation of the parties. The trial court decided only that the conditions of the parties did not warrant continuation of alimony. The Court of Appeals found substantial changes of circumstances, but all were within the contemplation of the parties at the time the decree was entered. Mr. Wagner never argues otherwise. Thus, unless the parties by their agreement established an independent test which abolished the generally accepted prerequisite, the alimony should not have been modified.

█ It is the general rule that parties are presumed to contract with reference to existing statutes (*In re Estate of Clise,* 64 Wn.2d 310, 391 P.2d 547 (1964); *Caruthers v. Sunnyside Valley Irrigation Dist.,* 29 Wn.2d 530, 188 P.2d 136 (1947)), and a statute which affects the subject matter of a contract is incorporated into and becomes a part thereof. *Dopps v. Alderman,* 12 Wn.2d 268, 273–74, 121 P.2d 388 (1942). If the parties to a contract wish to provide

---

[1]RCW 26.09.170, which superseded RCW 26.08.110 in 1973, incorporated the judicial overlay allowing modification "only upon a showing of a substantial change of circumstances".

for other legal principles to govern their contractual relationship, they must be expressly set forth in the contract. Absent a clear intent to the contrary disclosed by the contract, the general law will govern. *See Jenkins v. Morgan*, 100 Ga. App. 561, 112 S.E.2d 23 (1959); *Poole & Kent Corp. v. C.E. Thurston & Sons, Inc.*, 286 N.C. 121, 209 S.E.2d 450 (1974).

The settlement agreement provides no such clear intent to substitute an independent, unique standard regarding modification of the alimony. The contractual language, "as the condition of the parties may warrant," closely parallels the statutory language, "as circumstances may require." RCW 26.08.110. The difference in the language employed does not rise to the clear manifestation of intent required to make the general law inapplicable.

Mr. Wagner presented no parol evidence that the parties contemplated a standard different from that provided by the statutes and case law at the time the agreement was signed. Rather, the language employed appears to have been considered as commonly used terms.[2]

Furthermore, an interpretation of the contractual language which would abolish any requirement of substantial unanticipated changes would lead to instability in all separation agreements using this language, even though inadvertently. Due to the nature of the bargaining process in anticipation of dissolution, the amount of alimony contracted for may not always reflect only the then current needs and abilities of the parties. Yet, Mr. Wagner's proposed interpretation of the challenged language would allow a later judge to radically change a carefully drawn agreement if the new judge became convinced a party no longer required alimony, even if the circumstances were the

---

[2]We note the exact language is used in the form separation agreement found in 1 Wash. Prac., *Dissolution of Marriage* § 1151, ¶ 11 (1976). *See also* R. Llayman, *Your Divorce is Your Business* (1972), which appears to be a "do–it–yourself" dissolution manual. It is not likely that in either event the forms contemplated a unique, special or personal standard for those who use them. Llayman uses exactly the same language with reference to RCW 26.08.110.

same as the day the final agreement was signed. Such a procedure would be an unwarranted invitation to continued litigation based upon judge shopping.

The opinion of the Court of Appeals cites *Smith v. Smith,* 13 Wn. App. 585, 536 P.2d 179 (1975), which held that the exact language as used by the Wagners established an independent test. We note with interest that *Smith* cited no authority, provided no rationale for its holding, and no review was requested of this court. For the reasons stated above we now expressly disapprove of *Smith*'s departure from legal principles recognized by this court.

We hold the separation agreement established no special test for the modification of alimony. In the absence of any showing of substantial unanticipated changes in the circumstances of the parties, the termination of alimony by the trial court and the Court of Appeals was error.

## II
### PROCEEDS OF THE RESIDENCE

Concerning the family residence the settlement agreement provides as follows:

It is agreed that from date of this agreement, until August 31, 1977, plaintiff shall have the right to occupy said family home, as her residence, provided, however, that in the event plaintiff terminates her occupancy of said property, or upon the expiration of the period ending August 31, 1977, whichever is earlier, the parties agree to sell said property and divide, equally, the net proceeds thereof; provided, further, that defendant shall have the right of first refusal to purchase plaintiff's undivided one–half (1/2) interest in the property, within thirty (30) days of the receipt of any offer acceptable to both parties, on the same terms and conditions as contained in said offer. *If the property has not been sold prior to August 31, 1977, defendant shall have the option to purchase plaintiff's undivided one–half (1/2) interest in the property, which option defendant must exercise within sixty (60) days after plaintiff terminates her occupancy of the property, or August 31, 1977, whichever is earlier,* with the purchase price to be paid by defendant to plaintiff for her undivided one–half (1/2)

interest, in the sum of Eighty Seven Thousand Five Hundred Dollars ($87,500.00), cash, on closing.

(Italics ours.)

Mrs. Wagner and the courts below advance many reasons why the option was not valid and enforceable, including ambiguity, inconsistency, waiver and estoppel, and modification. Although this provision is not a model of clarity, and the actions of the parties were not always entirely consistent therewith, we disagree with the conclusion of the courts below.

In construing a contract, a court must interpret it according to the intent of the parties as manifested by the words used. *See Patterson v. Bixby,* 58 Wn.2d 454, 458, 364 P.2d 10 (1961). Courts can neither disregard contract language which the parties have employed nor revise the contract under a theory of construing it. *Cf. Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 73, 549 P.2d 9 (1976). An interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective. *Newsom v. Miller,* 42 Wn.2d 727, 731, 258 P.2d 812 (1953). This should be especially true when the writing is the product of a long period of negotiation with both parties having been represented by competent counsel.

The provision quoted above considers three possibilities for the sale of the house: (1) The proceeds could be divided equally; (2) Mr. Wagner could exercise his right of first refusal; or (3) Mr. Wagner could exercise his option for a set price by a specified date. Practically speaking, Mr. Wagner was given an opportunity to decide which of the three choices he would exercise, and an election of any one would necessarily preclude exercise of the other two. This does not mean, however, that all three possibilities could not exist simultaneously until Mr. Wagner made his election. By the terms of the third choice it was necessary for Mr. Wagner to exercise his option by August 31, 1977, or within 60 days after Mrs. Wagner terminated her occupancy, whichever was earlier. The trial court made a finding

of fact, unchallenged in this court, that Mrs. Wagner occupied the home until August 31, 1977. Two days thereafter (*i.e.*, within the 60–day period) Mr. Wagner chose to exercise his option and notified Mrs. Wagner of his election.

By arguing waiver and estoppel, Mrs. Wagner in effect claimed Mr. Wagner made some irrevocable choice prior to August 31, 1977. We do not agree.

■■ Waiver is the intentional relinquishment of a known right. It is necessary that the person against whom waiver is claimed have intended to relinquish the right, advantage, or benefit and his action must be inconsistent with any other intent than to waive it. Further, to constitute a waiver, other than by express agreement, there must be unequivocal acts or conduct evincing an intent to waive. *Birkeland v. Corbett,* 51 Wn.2d 554, 565, 320 P.2d 635 (1958). Intent cannot be inferred from doubtful or ambiguous factors. *White Pass Co. v. St. John,* 71 Wn.2d 156, 163, 427 P.2d 398 (1967). Estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Harbor Air Serv., Inc. v. State Bd. of Tax Appeals,* 88 Wn.2d 359, 560 P.2d 1145 (1977).

Mrs. Wagner argues that certain actions and inactions by Mr. Wagner make it "inequitable" for him to exercise the option. For example, she asserts he induced her to continue occupancy of the house. While it is possible such acts could have prevented him from contesting the issue of occupancy, the trial court did not so find and no error has been assigned to the absent finding. None of the claimed acts or failure to act, taken singly or collectively, constitute a waiver or estop Mr. Wagner's exercise of his option.

Mrs. Wagner also relies on the fact that Mr. Wagner worked with her to sell the residence beginning in the fall of 1974. She points to the fact that each contributed one–

half of the $10,000 retainer required for the Previews listing. This, however, does not evidence the election of one of the three choices. The settlement agreement impliedly required Mr. Wagner to aid in any attempts to sell the house. As his brief points out, "It is interesting to consider what equitable doctrines would be applied to Mr. Wagner's conduct, if he had failed to cooperate fully in attempts to sell the house or if he had made any effort to prevent the sale until after August 31, 1977."

Mrs. Wagner also relies upon the beginning and ending dates of the Previews listing to establish a claimed modification of the contract. Mutual modification of a contract by subsequent agreement of the parties arises out of the intention of the parties and requires a meeting of the minds. *Hanson v. Puget Sound Navigation Co.,* 52 Wn.2d 124, 127, 323 P.2d 655 (1958). Here also, intent cannot be based on doubtful or ambiguous factors. *See White Pass Co. v. St. John, supra.* There must also be consideration separate from that of the original contract. *Rosellini v. Banchero,* 83 Wn.2d 268, 273, 517 P.2d 955 (1974). We find neither a clearly manifested mutual intent nor any new consideration for the alleged modification.

Mr. Wagner's assistance in the attempted sale did not mean he intended to forfeit his option if the house did not sell by August 31, 1977, as noted above. Further, it did not evince any intent to modify the contract so as to abolish his option. His acceptance of Mrs. Wagner's partial payment of the Previews retainer did not change this. It would have been to Mrs. Wagner's benefit for the house to have been sold since she would have received one-half of the increased proceeds pursuant to the separation agreement, and Mr. Wagner would not have been able to exercise the option.

It could be said the payment was made in an attempt to make the exercise of the option impossible; it cannot be said, however, that it was made to induce Mr. Wagner to otherwise relinquish his option through modification of the

agreement. Thus, the $5,000 paid by Mrs. Wagner does not amount to consideration.

At best the Previews listing might have modified the separation agreement to the extent that it would have deferred the time at which Mr. Wagner's option would have ripened. Even if this were true, however, Mr. Wagner's attempt to exercise the option would be considered continuing. The only act required by him during the 60–day option period was to notify Mrs. Wagner that he desired to exercise it.

Finally, it is important to note that the trial court made no express written findings on the elements of waiver, estoppel, or modification. This court is not in a position to supply those missing elements.

A court cannot, based upon general considerations of abstract justice, make a contract for parties which they did not make for themselves. *Jackson v. Domschot,* 40 Wn.2d 30, 34, 239 P.2d 1058 (1952); *Merlin v. Rodine,* 32 Wn.2d 757, 759, 203 P.2d 683 (1949). Mrs. Wagner has advanced no legal theory supported by the facts of this case. Thus, the option provision in the separation agreement should be enforced as written.

The Court of Appeals is reversed on both issues and the cause is remanded to the trial court for disposition consistent with this opinion.

UTTER, C.J., and ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.