[No. 4159-0-III.  Division Three.  January 7, 1982.]

*In the Matter of the Relationship of* ANN M. EGGERS, *Respondent, and* HAROLD H. EGGERS, *Appellant.*

*John S. Biggs* and *Jones & Biggs*, for appellant.

*Ronald K. McAdams* and *McAdams & Ponti*, for respondent.

Roe, A.C.J.—Ann and Harold (Harley) Eggers were married in 1967 and divorced in 1970. In 1973, Harley asked Ann to move back into his home. She agreed, providing Harley would divorce the woman he had married in the interim, would agree to pay her for work she did, and would give her an independent bank account and some interest in some property as security. Ann and Harley lived together for 5 years, holding themselves out as husband and wife. Ann worked approximately 20 hours per week for Harley's businesses during this time.

Ann and Harley separated on July 7, 1978. Shortly thereafter, Ann filed a "Petition for a Dissolution of Meretricious Relationship", seeking an equitable division of property, both real and personal, and an allocation of

indebtedness, *i.e.,* that she would be awarded her car, household furnishings and $10,000 in cash and Harley would be required to pay all indebtedness. Harley's attorney orally moved to dismiss the petition for failure to state a claim, which was denied. His second attorney also moved to dismiss the petition, which was denied by a court commissioner and affirmed by the Superior Court. There was no appeal from that ruling; rather, both Ann and Harley appeal from the disposition made by the trial court in terminating the relationship.

At trial, only Ann testified, as Harley became ill on the morning of trial. After considering her testimony, the trial court issued two letter opinions. In the first, the court found there was an express oral contract to employ Ann in Harley's businesses for 20 hours per week at $2.50 per hour. The court also applied the 3–year statute of limitations, RCW 4.16.080(3), and allowed judgment for $7,800 ($2.50 per hour times 20 hours per week times 156 weeks). It also awarded $150 as a sanction for Harley's failure to respond to interrogatories, but did not allow attorney's fees. The court rejected Ann's alternate theories of quantum meruit and contract to create an interest in property. Ann moved for reconsideration, urging the statute of limitations had not been pleaded and was therefore unavailable to Harley, and that she was entitled to attorney's fees based on her wage claim pursuant to RCW 49.48.030.

In a second letter opinion, the court affirmed its earlier decision as to Ann's alternate theories of recovery, recomputed the wages due her to $7,000 ($125 per month for 56 months), awarded $800 attorney's fees and continued the award for the $150 sanction.

■ Harley first argues the trial court should have found Ann waived her wage claim because she made no demand for wages during the 5–year period, nor did she pay herself while she had the authority to write checks. He cites no authority to support this assignment of error and thus we will not consider it. *State v. Kroll,* 87 Wn.2d 829, 838, 558 P.2d 173 (1976); *State v. Rutherford,* 66 Wn.2d 851, 857,

405 P.2d 719 (1965).

Harley also contends the trial court erred in interpreting the oral contract between the parties. The trial court found that in 1973, when Ann and Harley began living together, there was an express oral contract between them under which Ann worked 20 hours per week at $2.50 per hour. Harley claims either the contract was formed when he gave Ann an undated document approximately a year later, or that the document was a subsequent modification of the contract. That document provided:

> For the considered sum of $40.00 monthly I Ann Eggers?? agree to compute all road and fuel taxes for Allied Prod. Big Bend & all other typing, Bookkeeping duties, etc.
>
> Computed [at] $2.50 per hour for 4–hr periods each month.
>
> H H Eggers

■■ First, there was substantial evidence to support the trial court's finding of an express *oral* contract and we will not disturb this finding on appeal. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 574, 343 P.2d 183 (1959). We also do not believe this document evidences a modification of the contract. Mutual modification of a contract by the subsequent agreement of the parties arises out of the parties' intentions and requires a meeting of the minds. *Wagner v. Wagner,* 95 Wn.2d 94, 103, 621 P.2d 1279 (1980); *Hanson v. Puget Sound Navigation Co.,* 52 Wn.2d 124, 127, 323 P.2d 655 (1958). Ann testified that when Harley gave her the document, she told him, "That isn't what we agreed to at all." She never signed this document, which was a unilateral act of Harley's. Thus, there was no meeting of the minds to modify the oral contract and the trial court was correct in enforcing it.[1]

---

[1] Ann argues the trial court erred in interpreting the contract and that she should have been awarded $5 per hour for 20 hours per week, since the trial court allowed the statute of limitations to apply. The construction of an oral contract is for the trier of fact. *Palmiero v. Spada Distrib. Co.,* 217 F.2d 561, 566 (9th Cir. 1954). Ann's own testimony indicated both that a fair rate of compensation for bookkeepers was $5 per hour, and that she had agreed to take less than that sum.

Ann's arguments on appeal concern the distribution of property acquired during a "meretricious" relationship.[2] She argues first that there was evidence to distribute the property under the principles developed in past meretricious relationship cases. The trial court, however, found there was not sufficient evidence to sustain such an award. We agree.

■ In a meretricious relationship, the court will presume, in the absence of any evidence to the contrary, the parties intended to dispose of the property as they did dispose of it. *Creasman v. Boyle,* 31 Wn.2d 345, 356, 196 P.2d 835 (1948). Thus, property acquired belongs to the person in whose name legal title stands, unless there is a trust relationship between the parties. *Creasman v. Boyle, supra* at 351. Although courts have been reluctant to apply the *Creasman* presumption and have refused to do so under a number of theories,[3] *Creasman* has not specifically been overruled. *Latham v. Hennessey,* 87 Wn.2d 550, 554 P.2d 1057 (1976).

Ann argues there was an implied partnership or joint

---

There was substantial evidence to support the trial court's award, and we will not disturb it. *Thorndike v. Hesperian Orchards, Inc., supra.*

[2]Cases criticize the use of the term meretricious in characterizing this relationship, but that is how the parties here viewed it in their pleadings. "Meretricious" comes from the Latin word "meretrix", meaning prostitute. Other descriptions have included nonmarital, partnership, or joint venture. Courts have struggled with a descriptive term for such a party. We note the acronym POSSLQ, used in the 1980 census, meaning "Persons of Opposite Sex Sharing Living Quarters", which has been criticized because literally it included married couples and communal livers, neither of which is a meretricious relationship. CUPOS has been suggested, originating from "Cohabiting Unmarried Persons of Opposite Sex". We prefer the latter term.

[3]Other theories used by the courts to rebut the *Creasman* presumption are resulting trusts, *Walberg v. Mattson,* 38 Wn.2d 808, 232 P.2d 827 (1951); tenancy in common, *Iredell v. Iredell,* 49 Wn.2d 627, 305 P.2d 805 (1957); and individual ownership, *West v. Knowles,* 50 Wn.2d 311, 311 P.2d 689 (1957). *See generally* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 739–45 (1974). Ann has not argued application of any of these theories, nor is there support for them in the record.

venture between Harley and her which would allow the court to award her a share in the property acquired in Harley's name. In *Poole v. Schrichte,* 39 Wn.2d 558, 236 P.2d 1044 (1951), the court determined the respective interests of Mrs. Poole and Schrichte in a tavern and in personal property. The money used to purchase the tavern came both from Schrichte's wages and from the profits of a beauty salon owned and managed by Mrs. Poole. In addition, her credit was pledged for the purchase, and she assisted in the tavern's operation. The court held Mrs. Poole's

> rights do not stem from cohabitation or the meretricious relationship, but from the fact that the proceeds from the beauty shop she operated clearly constituted a larger [portion] of the Crosley account than did Mr. Schrichte's earnings as a railroad switchman[,]

*Poole v. Schrichte, supra* at 564, and found a joint venture. In *In re Estate of Thornton,* 81 Wn.2d 72, 80, 499 P.2d 864 (1972), the court found prima facie evidence of an implied partnership where the parties jointly contributed labor to the business, shared decision making and benefited jointly from the profits. *But see In re Estate of Thornton,* 14 Wn. App. 397, 541 P.2d 1243 (1975), *review denied,* 86 Wn.2d 1009 (1976), where the court found the prima facie evidence was rebutted.

Here, there is no evidence Ann contributed any money toward the purchase of any property. Because she was paid wages at an agreed rate for her work, she cannot claim her efforts showed a joint venture. She did not contribute her earnings to the businesses, nor did she share in the decision making. There is therefore no implied partnership between the two. The trial court was correct in not awarding Ann property based on the equitable theories developed in reaction to *Creasman.*

Ann's alternate contention is that the trial court should have awarded her an interest in Harley's property by applying the community property laws by analogy to this dissolution of a "meretricious" relationship. An alternate

approach to the *Creasman* presumption and its exceptions is stated:

> A court could ascertain whether there exists a long–term, stable, nonmarital family relationship. Such relevant factors include continuous cohabitation, duration of the relationship, purpose of the relationship, and the pooling of resources and services for joint projects. If a relationship exists, it is reasonable to assume that each member in some way contributed to the acquisition of the property.

*Latham v. Hennessey, supra* at 554.[4]

Whether a meretricious relationship is of a quality which would allow for equitable distribution is a question of fact, *see Latham v. Hennessey, supra; Omer v. Omer,* 11 Wn. App. 386, 391, 523 P.2d 957 (1974), and the burden is on the party seeking equitable distribution. Here, the trial court made no finding of a stable, long–term, nonmarital relationship and instead allowed Ann to recover on a wage claim. Where a trial court fails to make an express finding on a material fact, we must deem the fact to have been found against the party having the burden of proof. *Tacoma Commercial Bank v. Elmore,* 18 Wn. App. 775, 778, 573 P.2d 798 (1977). Because Ann had the burden of proof on this issue, the trial court's failure to make an express finding must be held against her. A contract for wages between the spouses is atypical of marriage. Therefore, since there was no stable, long–term, nonmarital relationship, the trial court was correct in not awarding the property to Ann on this equitable theory.

The attorney's fees awarded by the court were based on the statute. RCW 49.48.030. There was no error in this award.

---

[4]The court has also applied equitable principles to divide property acquired during cohabitation of a man and woman not legally married when one of the parties believes in good faith they are married. *Buckley v. Buckley,* 50 Wash. 213, 96 P. 1079 (1908). Where the parties know they are not married, however, the *Creasman* presumption apparently applies. The evidence does not support any good faith belief by either of the parties that they were still married.

The judgment of the trial court is affirmed.

GREEN and MUNSON, JJ., concur.