[No. 10354–7–I.   Division One.   April 27, 1983.]

NEIL EBLING, *Respondent,* v. GOVE'S COVE, INC.,
*Appellant.*

*Mullavey, Prout, Grenley & Sonkin* and *Charles Mullavey,* for appellant.

*Lasher & Johnson* and *Anthony J. W. Gewald,* for respondent.

SCHOLFIELD, J.—Gove's Cove, Inc., appeals from a judgment awarding Neil Ebling $9,984, including exemplary damages, costs and attorney's fees of $6,400 for wages willfully withheld pursuant to RCW 49.52.050(2)[1] and RCW 49.52.070. We affirm.

Neil Ebling (Ebling) was employed as a salesman for Gove's Cove, Inc. (Gove's) from February 1978 to November 15, 1978. Ebling was initially hired to sell new sailboats for a commission of 20 percent of Gove's net commission on each new vessel sold. Approximately 2 weeks

---

[1]RCW 49.52.050(2) provides:

"Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who

". . .

"(2) Wilfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract; . . ."

after he was hired, Ebling agreed to transfer to Gove's used sailboat office located on Westlake Avenue. Ebling and Edward Gove, owner and president of Gove's, agreed that in return for his agreement to manage the Westlake office, Ebling would receive 35 percent of all commissions generated by the Westlake Avenue office, without regard to which salesperson effected the sale.

Ebling successfully pursued this employment for approximately 3 months. Edward Gove then became dissatisfied with the manner in which he operated the Westlake office and requested changes in the way Ebling conducted the business. On October 23, 1978, Edward Gove informed Ebling that his commission rate would be reduced effective November 1, 1978 to 15 percent on transactions which he negotiated, plus a salary of $500 per month. Ebling protested this change and refused to agree to it.

November 3, 1978, Ebling informed Edward Gove that he was not satisfied with Gove's new commission rate, and terminated his employment effective November 15, 1978. Ebling received checks for his commission payments on November 15 and 22, and December 12, 1978. Ebling called Gove's and was informed by the bookkeeper and Edward Gove that the checks reflected the commission rate of 15 percent, but cashed the checks. He then filed suit against Gove's, requesting damages for commissions withheld or for the reasonable value of services performed for which he had not been compensated, plus double damages and attorney's fees pursuant to RCW 49.52.050(2), 49.52.070, and 49.48-.030. Ebling was awarded judgment for double damages, costs and attorney's fees and Gove's appeals.

Gove's first contends there was not substantial evidence to support the trial judge's findings from which he concluded that Ebling was an "employee" of Gove's within the meaning of RCW 49.52.050(2) and RCW 49.52.070. Gove's contends the evidence established that Ebling was employed as an independent contractor, and therefore cannot recover under the statutes which apply only to traditional employer/employee relationships.

An independent contractor is one who contracts to perform services for another, but is not subject to the other's right to control his physical conduct in performing the services. *Hollingbery v. Dunn,* 68 Wn.2d 75, 79–80, 411 P.2d 431 (1966). *See also* Restatement (Second) of Agency § 2(3) (1958). An employee is one whose physical conduct in the performance of the service is subject to the other's right of control. *Hollingbery,* at 79; *Massey v. Tube Art Display, Inc.,* 15 Wn. App. 782, 551 P.2d 1387 (1976). There was abundant evidence that both Edward Gove and his general manager, Richard Butler, believed they had a right to control the manner in which Ebling effected sales of boats. Ebling also understood Gove's to have that right of control. Substantial evidence supports the findings underlying the conclusion that Ebling was an employee of Gove's within the meaning of RCW 49.52.050(2) and 49.52.070.

Gove's next contends there was no substantial evidence to support the trial judge's finding that Ebling's commission rate was not revised, in view of evidence revealing Ebling's awareness of an industry custom permitting such a revision, Gove's express reservation of the right to make such revision, and the fact that Ebling cashed three commission checks calculated at the revised rate. We do not agree.

The issue presented by these assignments of error is whether the trial judge erred in concluding that a valid and enforceable bilateral employment contract continued in force between Ebling and Gove's until Ebling terminated his employment on November 15, 1978. Under Gove's interpretation, the judge should have concluded from the evidence that Gove's terminated the contract effective November 1, with Ebling employed at Gove's unilaterally imposed commission rate from November 1 to November 15.

The trial judge correctly concluded that the agreement between Gove's and Ebling was a bilateral contract. There is abundant evidence that in exchange for his promise to manage the Westlake office, Ebling was promised 35 per-

cent of all commissions received by Gove's at the Westlake location. A bilateral contract is one in which there are reciprocal promises. The promise by one party is consideration for the promise by the other. Each party is bound by his promise to the other. *Cook v. Johnson,* 37 Wn.2d 19, 23, 221 P.2d 525 (1950); *Higgins v. Egbert,* 28 Wn.2d 313, 182 P.2d 58 (1947).

Mutual modification of a contract by subsequent agreement arises out of the intentions of the parties and requires a meeting of the minds. *Wagner v. Wagner,* 95 Wn.2d 94, 103, 621 P.2d 1279 (1980); *Hanson v. Puget Sound Nav. Co.,* 52 Wn.2d 124, 127, 323 P.2d 655 (1958). Without a mutual change of obligations or rights, a subsequent agreement lacks consideration and cannot serve as modification of an existing contract. *Rosellini v. Banchero,* 83 Wn.2d 268, 517 P.2d 955 (1974). There was no mutual agreement between Ebling and Gove's to change the commission rate.

A similar fact situation existed in the case of *Warner v. Channell Chem. Co.,* 121 Wash. 237, 208 P. 1104 (1922). In that case, Warner was employed as a commissioned salesman and was performing adequately, having earned the right to exercise an option to renew his employment contract according to its terms, and having exercised that option. While continuing to perform, he was informed by his employer that the terms of the contract were being changed and his commission was being cut from 7 to 5 percent. The salesman refused to accept the arbitrary change in the contract, but continued to perform his duties for the employer. The court held the employee had elected to treat the employer's action as a breach of contract, which breach he did not waive by continuing to work for the employer.

The trial judge reached a similar conclusion in this case. He correctly concluded the oral contract to employ Ebling for 35 percent commission on all sales was not effectively modified because Ebling never agreed to the terms of the modification. Ebling was entitled to 35 percent commission on all sales under the original contract terms until he ter-

minated his employment on November 15.

█ Gove's also contends when Ebling cashed his commission checks, an accord and satisfaction occurred. Accord and satisfaction was not raised in Gove's answer as an affirmative defense, as required by CR 8(c). The trial judge made no express finding on accord and satisfaction. Additionally, although there was some evidence in the record tending to prove an accord and satisfaction, it does not appear the question was tried by express or implied consent of the parties. *See* CR 15(b). The defense is deemed waived, and may not be raised on appeal. *See Cannon v. Miller,* 22 Wn.2d 227, 239, 155 P.2d 500 (1945); *John M. Keltch, Inc. v. Don Hoyt, Inc.,* 4 Wn. App. 580, 483 P.2d 135 (1971).

We next address Gove's contention there was not substantial evidence to support the trial judge's findings from which he concluded that Gove's willfully withheld commissions due Ebling.

██ Under RCW 49.52.050(2), a nonpayment of wages is willful when it is not a matter of mere carelessness, but the result of knowing and intentional action. *Brandt v. Impero,* 1 Wn. App. 678, 463 P.2d 197 (1969). Gove's admitted it knowingly and intentionally refused to pay Ebling under the commission rate for which Ebling had originally agreed to render his services. Gove's claims it had a genuine belief that it was obligated to pay only the amounts it determined were due and that a bona fide dispute over the amount of Ebling's entitlement was therefore established which rendered the statutory sanctions inapplicable.

An employer's genuine belief that he is not obligated to pay certain wages precludes the withholding of wages from falling within the operation of RCW 49.52.050(2) and 49.52.070. *Simon v. Riblet Tramway Co.,* 8 Wn. App. 289, 505 P.2d 1291, 66 A.L.R.3d 1069 (1973).

> An employer does not willfully withhold wages within the meaning of RCW 49.52.070 where he has a bona fide

belief that he is not obligated to pay them. *See State ex rel. Nilsen v. Lee,* 251 Ore. 284, 444 P.2d 548 (1968). *McAnulty v. Snohomish Sch. Dist. 201,* 9 Wn. App. 834, 838, 515 P.2d 523 (1973).

Whether Gove's had a genuine belief was a question of fact requiring the trial judge to weigh the credibility of the evidence. This court will uphold the trial judge's interpretation of disputed testimony when any reasonable view substantiates his findings, even though there may be other reasonable interpretations. *Kaas v. Privette,* 12 Wn. App. 142, 529 P.2d 23 (1974). Our review is limited to determining whether substantial evidence supports the findings and, if so, whether those findings support the conclusions of law and judgment. Substantial evidence is evidence in sufficient quantum to persuade a fair–minded person of the truth of the declared premise. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). We find substantial evidence in the record to support the trial judge's findings.

Seven transactions were in dispute. On three sales agreements executed on June 2, October 15, and October 27, but closing after November 1, Gove's paid Ebling 15 percent rather than 35 percent commission. The reason Edward Gove gave for paying 20 percent less commission on these sales was that he revised the commission rate effective November 1, and the custom in the industry, as well as the agreement with Ebling, allowed him to change the commission rate up until the time the sale was consummated and payment received. Ebling introduced contradictory evidence that the industry custom, as well as his own understanding, was that the salesperson became entitled to the commission at the rate in effect at the time he presented a ready, willing and able buyer (*i.e.,* when the sales agreement was executed by the buyer).

On a sales agreement executed August 14, a new boat was sold through the Westlake office. Gove's did not receive payment for this boat until March 1979, and Gove's paid Ebling no commission on this sale. Gove's asserted the reason Ebling was not paid a commission on this sale was

because Ebling was authorized to sell only used boats at the Westlake location. Ebling presented evidence tending to show he had sold other new boats, and the agreement was for him to receive 35 percent of Gove's commission on all boats sold at that location.

Gove's paid Ebling no commission on the sale of a dinghy through the Westlake office to an employee of Gove's Cove. Gove's offered no explanation for why Ebling received no commission for this sale. Ebling stated he did not know why he was paid no commission on that sale.

On November 7, LaRue Gove executed a sales agreement through the Westlake office for sale of a Cape Dory 25–foot boat. Ebling was paid no commission on this sale. Edward Gove testified Ebling was entitled to no commission because he did no work to effect the sale. Ebling testified Gove told him the reason he received no commission was because he had already given notice, and there was no reason to pay him for the sale.

The trial judge determined that on the first three sales Gove's owed Ebling the 20 percent balance of his commission because Ebling had never agreed to the new 15 percent commission rate. On the three sales for which no commission was paid, the judge determined Ebling was entitled to his 35 percent of Gove's commission. On the seventh transaction, the judge determined Ebling had been paid his full commission.

The trial judge weighed the credibility of Edward Gove's explanations and found his understanding of the dispute to be arbitrary and unreasonable. Edward Gove was not consistent in the reasons given for withholding commissions. From a review of the above evidence, we hold there was substantial evidence supporting the trial judge's finding that Gove's willfully withheld Ebling's commissions, and that there was no bona fide dispute as to the amounts actually owed. The judge therefore correctly concluded that the dispute was insufficient to remove Gove's nonpayment of wages from the sanctions imposed by RCW 49.52.050(2) and 49.52.070.

The judgment is affirmed.

Ebling's counsel seeks approximately $4,200 in attorney's fees for his services rendered on appeal. After a review of the briefs, the record, and counsel's affidavit in support of his application for attorney's fees, we award attorney's fees in the amount of $3,000 for services rendered to Ebling on this appeal. *Ranta v. German,* 1 Wn. App. 104, 459 P.2d 961 (1969).

ANDERSEN, C.J., and RINGOLD, J., concur.

Reconsideration denied June 1, 1983.

Review denied by Supreme Court August 12, 1983.