[No. 65157-4. En Banc.]
Argued October 28, 1997.     Decided January 29, 1998.
JOHN PAUL JONES, *Petitioner*, v. CECILIA M. BEST, *as Personal Representative, Respondent.*

*Walters, Whitaker, Finney & Falk,* by *Michael D. Finney* and *Robert E. Lawrence-Berrey, Jr.,* for petitioner.

*Talbott, Simpson, Gibson & Davis, P.S.,* by *Blaine G. Gibson,* for respondent.

DOLLIVER, J. — The Plaintiff in this case is John Paul Jones, a Realtor, who sued for his full $37,000 commission following the $740,000 sale of real property in Yakima County. The Defendant is the estate of Peter C. Best, who owned and sold the orchard Mr. Jones listed. Following a bench trial, the Honorable Robert N. Hackett found for the Plaintiff, awarding him his full commission, less $500, which he found the Plaintiff had agreed to deduct. The trial court also awarded Plaintiff prejudgment interest and attorney fees. The Court of Appeals reversed, finding Mr. Jones was estopped from claiming his full commission, and instead awarded him $18,000 and prejudgment interest. The Court of Appeals awarded attorney fees to the Defendant. The Plaintiff's petition for review was granted.

John Paul Jones, the Plaintiff, is a licensed real estate agent in the State of Washington. Peter Best, the Defendant, was the owner of a 96-acre orchard in Zillah, Washington. In January 1989, Mr. Best approached Mr. Jones about selling the orchard. Mr. Best had sold and repossessed the orchard several times, so Mr. Jones was familiar with the property and had an acquaintance of several years with Mr. Best. On January 26, 1989, the two men entered into a

one-year exclusive listing agreement: The orchard was listed for $800,000, and Mr. Jones had the right to sell it for that price or any other to which Mr. Best agreed. Mr. Jones would receive five percent of the sale price as his commission, whether he or someone else sold the property.

Two or three months after the agreement was made, Mr. Jones learned that Pacific Fruit Growers & Packers, Inc. was a potential purchaser of the orchard. Earl Nordberg, a Realtor with whom Mr. Jones had worked in the past, was working for Pacific Fruit. Mr. Best informed Mr. Jones at that time that he was considering Pacific Fruit's offer of $735,000 or $740,000. At their next meeting, Mr. Best told Mr. Jones he had made a deal on the orchard. Figuring that five percent of the purchase price of $740,000 was $37,000, Mr. Jones told Mr. Best, "Pete, I'll take $18,000, and you take care of Nordberg." Verbatim Report of Proceedings at 16. Although he knew he was entitled to the full $37,000, Mr. Jones intended to take a little less than half of the commission owing and have the remainder paid to Mr. Nordberg who, though not the listing agent, had procured the buyer. In similar transactions involving Mr. Nordberg, Mr. Jones stated they each took half of the commission—"50 percent for the seller and 50 percent for the lister"—and that was what he had expected would occur, through Mr. Best, in this sale. Verbatim Report of Proceedings at 21. Mr. Jones testified Mr. Best shook hands and "was evidently well pleased." Verbatim Report of Proceedings at 20.

In mid-June 1989, Mr. Jones heard the sale of the orchard had closed. He called Mr. Best to ask for the $18,000 commission. Mr. Best was hostile and stated, "[Y]ou don't have any commission coming. . . . [Y]ou didn't sell the orchard." Verbatim Report of Proceedings at 17. Mr. Jones did not respond; he knew, however, that he had an exclusive listing agreement to receive five percent of any selling price. Ten minutes later, Mr. Best called back and asked Mr. Jones to show the listing agreement to E. Frederick Velikanje, Mr. Best's lawyer. He did. Around that same time, Mr. Nor-

dberg informed Mr. Jones that he had never received a commission.

Soon, Mr. Jones received a phone call from Mr. Velikanje, who wanted to know whether he had agreed, with Mr. Best, to take $18,000 for his commission. Mr. Jones replied that he had, "as long as [Mr. Best] took care of Nordberg." Verbatim Report of Proceedings at 18. On June 21, 1989, Mr. Jones and Mr. Nordberg each received a letter from Mr. Velikanje. It stated that he would send a check for $18,000 upon receipt of a release, signed by both Mr. Jones and Mr. Nordberg, showing that the $18,000 was a complete settlement.

Mr. Jones wrote back on June 29, 1989, stating that, as the exclusive listing agent, he was entitled to the full five percent of the purchase price, or $37,000. He indicated he would accept $18,500, plus interest and costs, as a full release of his claims under the agreement, but would need the full $37,000 to get a release from Mr. Nordberg. He stated the interest was $6 per day, dating from May 31, 1989, and that legal consultation had cost him $150.

Mr. Jones received a final letter from Mr. Velikanje, along with a check for $18,000. The letter stated the check was forwarded as a means of settlement and compromise, upon Mr. Jones's representation that he had an exclusive listing, despite the fact he did not sell the property. The letter reiterated the check was meant "as a final and complete disposition and settlement of this matter." Ex. 10. Mr. Jones then sued for the full $37,000.

Mr. Best died during the pendency of this case. Mr. Velikanje testified he had been Mr. Best's attorney for several years. In April 1989, he learned Mr. Best was interested in Pacific Fruit's offer of $740,000. Mr. Velikanje also testified Mr. Best "would not go ahead with this unless he could work something out with John Paul Jones as to the commission." Verbatim Report of Proceedings at 29. In fact, Mr. Best was going to offer $15,000 "as a settlement." Verbatim Report of Proceedings at 29. (The trial court admitted this testimony, which was hearsay, only to show

Mr. Best's state of mind—willingness to negotiate a deal —not for the truth of the matter asserted.) Mr. Best later told Mr. Velikanje they had met and agreed to $18,000. Mr. Velikanje testified he then called Mr. Jones, who said he had agreed to take $18,000. Mr. Jones never cashed the $18,000 check, but returned it before suing Mr. Best.

In oral findings following argument, Yakima Superior Court Judge Robert N. Hackett stated the problem in this case arose because Mr. Jones and Mr. Best "weren't communicating," and the conversation between the two men was "never an agreement." Verbatim Report of Proceedings at 70. The trial court went on, however, to find that "what the agreement meant was that the share owed to Mr. Jones would be $18,000.00[,]" a figure premised on Mr. Jones's belief that Mr. Nordberg would be entitled to some payment for his efforts. Verbatim Report of Proceedings at 71.

In his written findings and conclusions, Judge Hackett found Mr. Best "hoped the real estate commission would be substantially reduced" were he to accept a $740,000 offer. The court also appeared to have accepted Mr. Jones's version of the facts, finding, "Mr. Jones told Mr. Best that Jones would accept a commission of $18,000 and that Best would have to 'take care of Nordberg.' " Clerk's Papers at 16. The trial court further found "[t]here was never a complete agreement between Jones and Best regarding the entire commission being reduced to $18,000." Clerk's Papers at 17. He concluded Mr. Jones had not waived a commission greater than $18,000, but had agreed to reduce his commission by $500 (when he offered to accept $18,000, instead of $18,500, which would have been one half of $37,000). The trial judge awarded Mr. Jones $36,500, prejudgment interest, and attorney fees.

The Court of Appeals, Division Three, reversed in an unpublished opinion, holding that Mr. Jones should be estopped from claiming more than the $18,000 commission and that he was not entitled to attorney fees because he was no longer the prevailing party, but did award Mr. Jones prejudgment interest.

While this case appears to be fact-specific and easily resolved by application of well-settled contract principles, the trial court and Court of Appeals confused several theories in their attempts to resolve the issues. The evidence showed Mr. Jones and Mr. Best had a valid written contract —the exclusive listing agreement—which would give Mr. Jones five percent of the sale price of Mr. Best's orchard. Nobody has claimed the listing agreement was incomplete or in any way invalid. The confusion arose over the intended effect of Mr. Jones's "conversation" with Mr. Best, in which Mr. Jones told Mr. Best, "Pete, I'll take $18,000, and you take care of Nordberg." Verbatim Report of Proceedings at 16. The trial court did not find that Mr. Best replied, although Mr. Jones testified the two men shook hands and Mr. Best was pleased.

The trial court correctly found this conversation did not constitute an agreement. Inexplicably, however, the trial court then went on to conclude Mr. Jones agreed to reduce his commission by $500. The problem with the trial court's analysis is that the only time an "agreement" could have come about was during the ambiguous conversation related above. If there was no agreement as to a reduction of Mr. Jones's commission to $18,000, then it necessarily follows there was no agreement to a $500 reduction.

█ The Court of Appeals first held, correctly and as a matter of law, that Mr. Best could not owe Mr. Nordberg a commission because only Mr. Jones was entitled to a commission under the listing agreement. Although Mr. Jones and Mr. Nordberg may have had a practice of sharing commissions, such practice would only give rise to a claim by Mr. Nordberg against Mr. Jones, not Mr. Best. *Jones v. Best*, No. 14634-1-III, slip op. at 5-6 (Wash. Ct. App., Dec. 3, 1996).

The court then went on to hold, however, that Mr. Jones should be estopped from claiming more than $18,000. After discussing whether promissory or equitable estoppel should apply, the court concluded promissory estoppel was the proper doctrine. It reasoned that, since Mr. Nordberg had

no right to charge Mr. Best a commission, Mr. Jones's statement that he would accept $18,000 as his share was actually a *promise* to accept $18,000 as the entire commission. The court then stated Mr. Jones knew this promise would induce Mr. Best to change his position because "the [trial] court did find that Mr. Best was willing to sell for $740,000.00 only if the commission was substantially reduced." *Jones*, slip op. at 8.

This language is troubling for two reasons. First, the court's characterization of the trial court's findings is wrong. The trial court expressly declined to adopt the proposed finding that Mr. Best was willing to sell for $740,000 only if the commission was substantially reduced. Instead, the trial court found Mr. Best "hoped the real estate commission would be substantially reduced." Clerk's Papers at 16. This discrepancy is puzzling because Mr. Best assigned error to the trial court's failure to adopt the proposed finding that he was willing to sell only if the commission was substantially reduced.

Second, the Court of Appeals engaged in an analysis under the theory of promissory estoppel, which does not apply in this case. Promissory estoppel requires a promise which the promisor should reasonably expect to cause the promisee to change his position and which does cause the promisee to change his position, justifiably relying on the promise in such a manner that injustice can be avoided only by enforcement of the promise. *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967). The Court of Appeals substituted its judgment for the trial court's, which previously found there was no agreement or promise, and found Mr. Jones "promised" to accept a reduced commission. Where, as here, the trial court has weighed the evidence, the scope of review on appeal is limited to ascertaining whether the findings of fact are supported by substantial evidence and, if so, whether the findings support the conclusions of law and judgment. *Doe v. Boeing Co.*, 121 Wn.2d 8, 18-19, 846 P.2d 531 (1993); *Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479,

482, 457 P.2d 600 (1969). The trial court heard the evidence, judged the credibility of the witnesses, and found Mr. Jones made no promise to accept $18,000 as the entire commission. The sine qua non of promissory estoppel is the existence of a promise; there was no promise here.

■ Moreover, there was no justifiable, detrimental "change in position" by Mr. Best which would implicate promissory estoppel. As pointed out above, the Court of Appeals mistakenly relied on Mr. Best's unadopted proposed finding in holding that Mr. Best would not have agreed to sell for $740,000 if he had not believed Mr. Jones would cut his commission in half. While Mr. Velikanje testified Mr. Best would go ahead only if the commission were reduced, that evidence was offered and admitted only to show Mr. Best's state of mind—not for the truth of the matter asserted. The trial court merely found Mr. Best hoped the commission would be reduced, and, most importantly, found the conversation between Mr. Jones and Mr. Best occurred as Mr. Jones related it.

■■ Neither the litigants nor the courts have addressed this case as one of attempted, but unsuccessful, modification of a valid contract. Nevertheless, that is the appropriate analysis. Following the successful formation of a contract (the written listing agreement between Mr. Jones and Mr. Best, which set Mr. Jones's commission at five percent), there was an unsuccessful attempt at modification when Mr. Jones suggested he would take slightly less than half his commission owing if Mr. Best would "take care of Nordberg." Verbatim Report of Proceedings at 16. The modification was merely attempted because there is no evidence or finding of Mr. Best's response. Silence is not acceptance. Mutual modification of a contract by subsequent agreement arises out of the intentions of the parties and requires a meeting of the minds. *Wagner v. Wagner*, 95 Wn.2d 94, 103, 621 P.2d 1279 (1980); *Hanson v. Puget Sound Navigation Co.*, 52 Wn.2d 124, 127, 323 P.2d 655 (1958). Mutual assent is required and one party may not unilaterally modify a contract. *In re Relationship of Eggers*, 30 Wn. App. 867, 638 P.2d 1267 (1982).

In this case, there was no meeting of the minds as to the proposed modification. The written contract to pay Mr. Jones five percent was not effectively modified because Mr. Best never agreed to the terms of the modification. Mr. Jones was therefore entitled to his five percent commission under the original contract terms. *See Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 499, 663 P.2d 132 (1983).

Having decided there was no modification of the original, written contract, we need not determine the outcome of this case under the Statute of Frauds. We note only that contracts for the sale of land are required to be in writing, as are agreements authorizing agents to sell or purchase real estate for a commission. RCW 19.36.010; RCW 64.04.010-.020. It is well settled that subsequent oral agreements to modify such contracts can run afoul of the Statute of Frauds if not performed. *See Consolidated Elec. Distribs., Inc. v. Gier*, 24 Wn. App. 671, 678, 602 P.2d 1206 (1979) (citing *Gerard-Fillio Co. v. McNair*, 68 Wash. 321, 327, 123 P. 462 (1912)); *cf.* RCW 62A.2-209. We do not reach this issue because there was no agreement, oral or otherwise, to modify the valid written contract.

The Defendant also argues Mr. Jones waived his right to any more than $18,000 as a commission. The Court of Appeals did not reach this issue, having ruled in favor of the Defendant on the promissory estoppel theory. While we have found there was no meeting of the minds with respect to modification of the existing contract, we must still address the waiver issue.

A waiver is the intentional and voluntary relinquishment of a known right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive. *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954). To constitute implied waiver, there must exist unequivocal acts or conduct evidencing an intent to waive; waiver will not be inferred from doubtful or ambiguous factors. *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 354, 779 P.2d 697 (1989); *Wagner*, 95 Wn.2d at 102. The intention to relinquish the right or

advantage must be proved, and the burden is on the party claiming waiver. *Rhodes v. Gould*, 19 Wn. App. 437, 441, 576 P.2d 914, *review denied*, 90 Wn.2d 1026 (1978).

In this case, Mr. Jones did not waive his rights by express agreement, as there was no agreement. Moreover, circumstances do not indicate an intent to waive over half the commission; at most, they point to a desire to have that portion paid to someone else. Mr. Jones was not waiving his right to the full five percent commission, but suggesting that it be divided between him and Mr. Nordberg. This was no waiver, vis-à-vis Mr. Best; rather, it was a request that a portion be paid elsewhere. Mr. Best has not proved Mr. Jones waived his right to the $37,000 commission.

■ Prejudgment interest is granted to compensate a party for the loss of use of money to which he was entitled. *Richter v. Trimberger*, 50 Wn. App. 780, 785, 750 P.2d 1279 (1988). Mr. Best contends Mr. Jones is not entitled to prejudgment interest because he tendered a check in the amount of $18,000, which Mr. Jones refused to accept. Mr. Best relies on *Richter v. Trimberger*. In that case, Trimberger agreed to pay Richter $50,000 for preparing a crab boat and fishing the season. Richter stopped work and did not fish. Both parties agreed his work had been worth $12,000, so Trimberger sent him a check for that amount. Richter refused the check and sued for the full $50,000. Trimberger tendered $12,000 to the court registry, but Richter refused the funds and proceeded to trial. The trial court awarded judgment to Richter for $12,000, without interest. The Court of Appeals affirmed, holding Richter was not entitled to prejudgment interest because he had access to the funds all along. *Richter*, 50 Wn. App. at 785. Mr. Best contends Mr. Jones is likewise not entitled to prejudgment interest because he had the $18,000 check in his possession, yet refused to cash it.

■ ■ The Court of Appeals correctly held Mr. Jones was entitled to prejudgment interest because the tender of the check was conditional, i.e., Mr. Best first required Mr. Jones to get a release from Mr. Nordberg, then he sent a

letter with the check stating the funds were a final and complete disposition and settlement of the matter. Order Granting Clarification, Amending Op., and Denying Recons. at 2. We have held that tender of the amount due must be unconditional in order to stop interest from running. Tender of less than the full amount due under the contract constitutes a conditional tender. *Schmerer v. Darcy*, 80 Wn. App. 499, 504, 910 P.2d 498 (1996). In *Grant v. Auvil*, 39 Wn.2d 722, 728, 238 P.2d 393 (1951), Auvil tendered a check with the notation "[a]ccount paid in full," and Grant chose not to cash it because he believed doing so would constitute an accord and satisfaction. Similarly here, Mr. Jones did not cash the check because the accompanying letter provided it was tendered in full settlement of the matter. We affirm the award of prejudgment interest to Mr. Jones. As the prevailing party, Mr. Jones is entitled to attorney fees under the listing agreement.

DURHAM, C.J., and SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.