IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WILLIAM AND MARIA LAWSON, husband and wife, | ) ) ) | No. 40213-4-III |
| Respondents, | ) ) | |
| v. | ) ) | |
| BANKERS INSURANCE COMPANY, a Florida Profit Corporation, SANCTUARY BAIL BONDS LLC, an Arizona limited liability company; and CHRIS MONTGOMERY, an individual, in his capacity as Trustee, | ) ) ) ) ) ) ) | PUBLISHED OPINION |
| Appellants. | ) ) | |

LAWRENCE-BERREY, C.J. — Sanctuary Bail Bonds LLC (Sanctuary), together with the original "Deed of Trust" (DOT) trustee and the current DOT trustee, appeal the trial court's order declaring Sanctuary's three DOTs junior to the lien of William and Maria Lawson. In affirming, we conclude (1) Sanctuary's three DOTs contain an inadequate legal description, (2) a court may not disregard the legal description in a deed under the theory of construing it, and (3) a recording cover sheet may not amend the legal description in the DOT. We also decline to consider an argument Sanctuary raises on

appeal that it failed to raise below.

FACTS

Sanctuary does not assign error to any of the trial court's findings of fact, and

describes those findings as "undisputed." Br. of Appellants at 16. For this reason, our

statement of facts comes from the trial court's findings.

William Lawson and Maria Lawson commenced this action two weeks before a

nonjudicial sale was set to foreclose Sanctuary's DOT against property owned by David

McConnell and Susan McConnell. The Lawsons sought to restrain the sale and have

their lien against the McConnells' property declared superior to that of Sanctuary's.

The notice of trustee's sale described the property Sanctuary claims its DOT

encumbers:

> Lot one (1) of Chippewa-West Division, per plat thereof recorded
> September 2, 1980, in Volume 2 of Short Plats, page 35, under
> Auditor's File No. 169282, records of Pend Oreille County,
> Washington.
>
> Situate in the County of Pend Oreille, State of Washington.

Tax Parcel Nos. 433705549001 and 433706619048

Ex. D-117.

After a hearing, the trial court entered an order temporarily restraining the

trustee's sale, conditioned on the posting of a $5,000 bond.

The seeds of the dispute began in 1980, with the recording of the subdivision map. The legal description accompanying the map described the subdivision, comprised only of one lot, as spanning two sections—all of "Section 5" and a portion of "Section 6." Section 5 is 1.12 acres, contains a stick-built house, on which the Lawsons performed substantial labor and incurred substantial costs on behalf of the McConnells. The balance of the lot created by the subdivision is in Section 6, is .67 acres, and has a single-wide mobile home and shop. It is this subdivision lot in which the parties on appeal claim a senior security interest.

In 2005, the McConnells were deeded the subdivision lot, legally described as:

Lot 1 of CHIPPEWA WEST DIVISION, Short Plat Book 2, page 35, records of the Auditor of Pend Oreille County, Washington.

. . . .

Assessor's Parcel No.: 433705 54 9001 AND 433706 61 9048

Ex. P-1 (boldface omitted). The address of this lot is 305 McInnis Street, Ione, Washington.

In 2006, the Lawsons and their children became friends with the McConnells and their children. In 2011, the McConnells were deeded another property:

> Lot 36 of CHIPPEWA ADDITION, Plat Book 1, page 24, records of the Auditor of Pend Oreille County, Washington.
>
> . . . .
>
> Assessor's Parcel No.: 433706 51 9038

Ex. P-4 (boldface omitted). The address of this lot is 301 McInnis Street, Ione, Washington.

Around 2016, the McConnells moved from Ione to Bonners Ferry, Idaho, leaving their home at 305 McInnis Street in a state of serious disrepair. Also, substantial personal items had accumulated around the property.

The McConnells asked the Lawsons if they would clean up the property, and agreed to reimburse them for their time and expense. The Lawsons performed substantial work on and around the property, including on the house, mobile home, and shop. The McConnells did not reimburse the Lawsons.

In May 2019, Mr. McConnell asked Mr. Lawson to assist him in removing squatters from the property, and he also sought financial assistance from the Lawsons for delinquent property taxes. The Lawsons agreed to these requests, continued to clean up the property, and kept a running tab of the amounts owed.

By October 2019, the McConnells offered the Lawsons to give them a security interest in both 301 and 305 McInnis Street. In late November of that year, a quitclaim

deed (QCD) was executed in favor of the Lawsons, which contained accurate legal descriptions of both properties, along with their parcel numbers. Although the instrument executed was a deed, the Lawsons claim only a secured interest, and before trial, disclaimed any interest in 301 McInnis Street. The Lawsons failed to promptly record their QCD.

Around October 2020, Mr. McConnell was arrested in Arizona and detained on felony charges. The court ordered him held in jail, subject to posting a $75,000 bond. The McConnells contacted Sanctuary to obtain a bond. In exchange for the bond, the McConnells executed notes payable to Sanctuary, a collateral agreement, and—pertinent to this litigation—a DOT.

On October 30, 2020, Sanctuary's DOT was recorded with the Pend Oreille County Auditor. The DOT misspelled McInnis Street, misstated the zip code, misdesignated Sanctuary as the trustee, misdesignated Bankers Insurance Company as the beneficiary, and misstated the legal description as: "3-70 F2 PTRN OF LOT 1 CHPPEWA WEST LYING WITHIN SECTION 06-37-43. Tax Parcel Number(s): 433706519038." Ex. D-107 (italics omitted).

With respect to the legal description errors: At trial, no one could explain what "3-70 F2" meant, but Sanctuary's counsel suggested that "PTRN" meant "'portion.'" Clerk's Papers (CP) at 278. The subdivision name was misstated. There was no plat

5

book or page number for the subdivision. There was no mention of Section 5 in the legal description. And the tax parcel number refers to "Lot 36," rather than "Lot 1," the lot in which Sanctuary claims an interest.

A few days later, on November 2, 2020, Susan McConnell rerecorded the same DOT, but attached to it a "recording cover sheet." Ex. D-108. The recording cover sheet stated its purpose was to correct the parcel numbers, and listed the parcel numbers encumbered by the DOT as Nos. 433705549001 and 433706619048. These parcel numbers correspond to Lot 1, which is 305 McInnis Street. The recording cover sheet also included the following legal description: "Lot 1 Chippewa West lying within Section 06-37-43." Ex. D-108.

Around September 2021, Mr. McConnell absconded. Sanctuary hired a bounty hunter, but the bounty hunter could not find Mr. McConnell. The Arizona court forfeited Sanctuary's bond.

Around April 2022, the Lawsons heard from the city water department that someone had contacted it about conducting a foreclosure sale against the property in

which the Lawsons claimed their interest.[1]  The Lawsons contacted the auditor's office and learned about Sanctuary's DOT.  On April 6, 2022, the Lawsons recorded their November 2019 QCD.

On May 23, 2022, Sanctuary recorded the October 2020 DOT a third time.  The DOT had been altered by someone striking out words, phrases, and numbers, and typing in new words, phrases, and numbers.  No one initialed the changes.  The recording cover sheet accompanying the altered DOT provided the correct legal description for 305 McInnis Street.

Based on these facts, the trial court ruled: (1) the first two DOTs contained inadequate legal descriptions, (2) the recording cover sheets could not be used to correct the DOTs, and (3) the alterations in the third recorded DOT were legally ineffective to change its terms.[2]

---

[1] The trial court's findings state that the Lawsons lived at 305 McInnis Street—the McConnells' old address and the property in which the parties claim a senior interest. The findings do not state when the Lawsons moved to that address, and the trial testimony is not part of our record.  We surmise that the water department contacted the Lawsons because the water service at that address was in the Lawsons' name.

[2] Sanctuary does not challenge this particular conclusion of law.

7

LAW & ANALYSIS

A.      THE STATUTE OF FRAUDS

Sanctuary asserts that the original DOT contains a sufficiently definite description of the property to satisfy the statute of frauds or, alternatively, the first or second rerecorded deeds of trust with their respective cover sheets contain sufficient descriptions.  We disagree.

The real estate statute of frauds, RCW 64.04.010, requires that "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing an encumbrance upon real estate, shall be by deed."  A deed or other instrument affecting title to real estate must "afford[ ] an intelligent means for identifying the property, and does not mislead."  *Cont'l Distrib. Co. v. Smith*, 74 Wash. 10, 12, 132 P. 631 (1913) (quoting *Ontario Land Co. v. Yordy*, 44 Wash. 239, 243, 87 P. 257 (1906), *aff'd*, 212 U.S. 152, 29 S. Ct. 278, 53 L. Ed. 449 (1909)).  Courts may not disregard the language in a deed nor revise it under a theory of construing it.  *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980) (construing a settlement agreement); *and see Pelly v. Panasyuk*, 2 Wn. App. 2d 848, 864, 413 P.3d 619 (2018) (the rules of contract interpretation apply to interpreting deeds).

"We have consistently held that, in order to comply with the statute of frauds, a contract or deed for the conveyance of land must contain a description of the land

sufficiently definite to locate it without recourse to oral testimony, or else it must contain a reference to another instrument which does contain a sufficient description." *Bigelow v. Mood*, 56 Wn.2d 340, 341, 353 P.2d 429 (1960). Washington has, for many decades, stood without apology behind its prohibition on oral evidence meant to explain what property is intended by an insufficient legal description. *See, e.g.*, *Martin v. Seigel*, 35 Wn.2d 223, 228, 212 P.2d 107 (1949). "We feel that it is fair and just to require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties." *Id.*

One of the recognized exceptions to Washington's strict legal description requirement is reference to the tax parcel number. *Bingham v. Sherfey*, 38 Wn.2d 886, 889, 234 P.2d 489 (1951), recognizes that "a reference to this public record furnishes the legal description of the real property involved with sufficient definiteness and certainty to meet the requirements of the statute of frauds." *See also* 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 13.3, at 83 (2d ed. 2004).

### 1. *The legal description in the first recorded DOT is inadequate*

The legal description in Sanctuary's first recorded DOT stated: "3-70 F2 PTRN OF LOT 1 CHPPEWA WEST LYING WITHIN SECTION 06-37-43. Tax Parcel

Number(s): 433706519038." Ex. D-107 (italics omitted). Above the legal description, the DOT recited that the encumbered property was located in Pend Oreille County, Washington.

This legal description is insufficient to encumber 305 McInnis Street. First, no one could explain what "3-70 F2" meant. Second, the legal described a *portion* of Lot 1, not all of it. Third, there is no mention of a short plat book number or page number. Finally, a review of the assessor's records would show that the listed tax parcel number described Lot 36, which is 301 McInnis Street.

Sanctuary also points to the bail bond agreement and the collateral agreement, both of which are referenced in the DOT, and both of which referenced 305 McInnis Street as the collateral for the loan. Sanctuary argues the trial court erred by not construing the legal description as being reformed by those documents. We disagree.

As noted previously, a court may not disregard a legal description in a deed under a theory of construing it. *See Wagner*, 95 Wn.2d at 101. Here, the legal description referenced a portion of Lot 1, not the entire lot, and gave a tax parcel number that coincided with 301 McInnis Street. The legal description was clearly deficient to

10

encumber all of 305 McInnis Street. Moreover, a legal description giving a physical

address is insufficient to satisfy the statute of frauds. *Martin*, 35 Wn.2d at 228-29.[3]

> 2. *The legal description in the second and third recorded DOTs are inadequate*

The second and third recordings were of the same DOT. The second was

unaltered. Because the first recorded DOT is inadequate, so is the second. The third

recorded DOT contained numerous alterations. There are no initials next to any of the

alterations evidencing that the parties to the deed approved the alteration. Similar to

unauthorized alterations in a contract, the unauthorized alterations in the third recorded

DOT had no legal effect. *See Wagner*, 95 Wn.2d at 103 (modifying a contract requires

mutual assent, which cannot be based on doubtful or ambiguous factors).

Sanctuary next argues, "Alternatively, the Recording Cover Sheet Evidenced

Intent to Correct the Legal Description, and it is Sufficient to Constitute a Reformation

Due to Mutual Mistake or Scrivener's Error." Br. of Appellants at 28 (boldface omitted).

This argument requires us to determine the legislative purpose of these cover sheets and

whether the purpose would be furthered or hindered by allowing recording cover sheets

to amend the legal description in the deed.

---

[3] Sanctuary additionally argues that a person familiar with Ione would know what property the legal description intended to encumber, despite the many errors. This argument misses the point: the statute of frauds requires a sufficiently definite legal description to locate it without recourse to oral testimony. *Bigelow*, 56 Wn.2d at 341.

RCW 65.04.047(1) provides in relevant part that:

If the first page of an instrument presented for recording does not contain [the abbreviated legal description of the property, among other] information required by RCW 65.04.045(1), the person preparing the instrument for recording shall prepare a cover sheet that contains the required information. The cover sheet shall be attached to the instrument and shall be recorded as part of the instrument. . . . Any errors in the cover sheet shall not affect the transactions contained in the instrument itself. The cover sheet need not be separately signed or acknowledged. The cover sheet information shall be used to generate the auditor's grantor/grantee index, however, the names and legal description in the instrument itself will determine the legal chain of title.

No reported case has analyzed this language, and the only unreported case to analyze the provision in any depth simply said that the judgment and coversheet "give potential buyers 'notice' of an obligation that might impact the property." *Inglewood Holdings, LLC v. Jones Eng'rs, Inc.*, No. 74566-2-I, slip op. at 6 (Wash. Ct. App. Jan. 30, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/745662.pdf. The parties dispute whether the cover sheet may be read together with the underlying DOT to satisfy the statute of frauds.

RCW 65.04.047(1) states, "[a]ny errors in the cover sheet shall not affect the transactions contained in the instrument itself" and "the names and legal description in the instrument itself will determine the legal chain of title." Further, it provides that a cover sheet is appropriate when the required information is not present on the first page of the instrument, and that the cover sheet will be used to generate the grantor/grantee

index. *Id.* The plain meaning of these provisions, read together, indicates that the cover sheet's purpose is not to correct errors in the instrument, but to facilitate the creation of the index. The cover sheet spares the workers who generate the grantor/grantee index from having to hunt for the necessary information elsewhere in the document. This interpretation also harmonizes RCW 65.04.047 with RCW 64.04.020, which provides that "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgements of deeds." Were the cover sheet allowed to amend the underlying instrument, then a document that "need not be separately signed or acknowledged" could be used to freely alter a document that "shall be in writing, signed by the party bound thereby, and acknowledged by the party." RCW 65.04.047(1); RCW 64.04.020.

This reading of the statute also furthers the purposes of Washington's strict statute of frauds requirements. If parties could freely amend insufficient property descriptions through cover sheets, then the statute of frauds would no longer "require people dealing with real estate to properly and adequately describe it, so that courts may not be compelled to resort to extrinsic evidence in order to find out what was in the minds of the contracting parties." *Martin*, 35 Wn.2d at 228. We decline to create an exception to that longstanding principle of Washington law that would allow parties to unilaterally amend what they are charged with taking care to get right the first time.

13

B.    NEW REFORMATION ARGUMENT

"The general rule in this state is that an inadequate legal description is not subject to reformation. However, reformation is available if the inadequate legal description is the result of a scrivener's error or a mutual mistake." *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 888, 983 P.2d 653, 993 P.2d 900 (1999) (citations omitted). "One seeking reformation of an instrument must prove, by clear, cogent and convincing evidence, (1) both parties to the instrument had an identical intention as to the terms to be embodied in a proposed written document, (2) that the writing which was executed is materially at variance with that identical intention, and (3) innocent third parties will not be unfairly affected by reformation of the writing to express that identical intention." *Leonard v. Wash. Emps., Inc.*, 77 Wn.2d 271, 279, 461 P.2d 538 (1969).

Sanctuary argues the trial court erred by not reforming the DOT due to a mutual mistake or a scrivener's error. Sanctuary, pointing to the recording cover sheet prepared by Susan McConnell and the collateral agreement signed by the McConnells, argues it presented clear, cogent, and convincing evidence that both it and the McConnells intended the DOT to encumber 305 McInnis Street. For the reason explained below, we decline to address this argument.

In general, we will not consider an argument raised for the first time on appeal. RAP 2.5(a).

14

> "The underlying policy of the rule is to 'encourag[e] the efficient use of judicial resources. The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial.'"

*State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (alteration in original)

(quoting *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)).

At trial, Sanctuary used the term "reformed" to describe the second recorded DOT and the third recorded DOT. It called the second recorded DOT the "first reformed DOT," and it called the third recorded DOT the "second reformed DOT." *See* CP at 280 (Finding of Fact 1.37). Sanctuary argued that the recording cover sheet and other documents referenced in the DOT, *themselves*, had reformed the DOT's legal description. In other words, it did not ask for the trial court to reform the DOT, it asked for the trial court to *construe* those documents as correcting or amending the DOT's legal description. As explained above, these arguments are inconsistent with the statute of frauds because courts may not disregard a legal description in a deed under the theory of construing it. *See Wagner*, 95 Wn.2d at 101.

On appeal, Sanctuary's argument is materially different. It now is arguing, "A deed of trust may be reformed *by a court* on the showing of a mutual mistake or a scrivener's error." Br. of Appellants at 29 (emphasis added). This argument would get Sanctuary past the statute of frauds. Had it made this argument at trial, the trial court

15

No. 40213-4-III
*Lawson v. Bankers Ins. Co.*

would have had the opportunity to consider it, rule on it, and an appeal might have been

avoided. For this reason, we decline to consider this new argument.

Affirmed.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Staab, J.

_____
Cooney, J.

16