# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>NIA J. COLLINS,<br><br>                Respondent,<br><br>   and<br><br>ROBERT L. COLLINS,<br><br>                Appellant. | No. 52787-1-II<br><br><br><br>UNPUBLISHED OPINION |

GLASGOW, J.—Robert L. Collins and Nia J. Collins signed a CR 2A agreement in a marriage dissolution proceeding. The agreement provided for arbitration of disputes involving the content of the final pleadings and order as well as the construction and implementation of the agreement.

Robert appeals from the trial court's entry of its final pleadings and order and from the trial court's denial of his motion to compel further arbitration. He argues that under the CR 2A agreement's arbitration provision, all unresolved issues had to be addressed in arbitration before the trial court could enter a final order. Robert identifies several matters that he asserts were arbitrable disputes at the time the trial court entered the final order. Robert also argues that the trial court's findings of fact and conclusions of law do not support its final order. He asserts the trial court erred by limiting the arbitrator's future involvement in disputes between these parties. Finally, Robert argues the trial court erred by declining to award him attorney fees.

We hold that the issues Robert identifies as disputes necessitating arbitration either were not in dispute when the trial court entered the order or the trial court properly reserved them for further arbitration. The trial court did not err by entering a final order. We reject Robert's remaining arguments and affirm.

FACTS

Nia and Robert[1] Collins married in 1984 and separated in 2017. They had no children together who are still dependent. Nia filed for dissolution of the marriage in Pierce County Superior Court. Nia and Robert attended a mediation together in May 2018. Following the mediation, they entered into a detailed CR 2A agreement, which they filed with the trial court in July 2018.

A.     The CR 2A Agreement

The parties agreed that the CR 2A agreement would be "a legally binding and enforceable agreement in full and final settlement of all claims foreclosed by the terms of the Agreement." Clerk's Papers (CP) at 85. The agreement provided that "any disputes in drafting . . . the final documents or as to reserved or omitted issues shall be resolved by Norm[an] Margullis in binding arbitration," as well as any "dispute . . . in construing, implementing or effectuating th[e] Agreement." CP at 87, 94. Under the terms of the agreement, Nia's attorney was to draft final pleadings reflecting the agreement and submit them to the trial court to enter as a final order.

The CR 2A agreement contemplated equal division of assets and debt between Robert and Nia. For example, the agreement created an "overall 'global' settlement" designed to "achieve an equal division of community assets." CP at 89. "To the degree that one party has retained greater value than the other[,] the home sale proceeds will be used to equalize the award." CP at 91.

_____

[1] For clarity, we refer to the parties by their first names.

The CR 2A agreement described the process by which Robert and Nia were to sell their family home. It also established a framework for distributing assets from the home sale. Net sale proceeds were to be applied first to outstanding community debt and then distributed to achieve an overall equal division of property. The parties agreed that Robert would give Nia $10,000 from his share of the net sale proceeds to "satisfy any claim she may otherwise have to [Robert's] existing retirement benefits or future earnings." CP at 89.

The mediation resulted in similarly specific and detailed plans, which were incorporated into the CR 2A agreement, for dividing community specific debt, selling or dividing personal property, and distributing proceeds from the sale of personal property.

B.    Postagreement Arbitration

Under the agreement, Nia's attorney was to draft final pleadings to be entered by the trial court. However, Nia and Robert could not agree on several issues in Nia's proposed final pleadings. Robert submitted his own proposed final pleadings and a letter describing the disputed issues to the arbitrator, Norman Margullis, who arbitrated the disputed issues. *Id.* Margullis rendered detailed rulings resolving the disputed issues.

One issue that Margullis resolved was whether a pending offer to sell the family home should be enforced via the appointment of a special master. The home sale issue arose in part because Nia signed a sale agreement without informing Robert or obtaining his signature. Margullis ruled that the offer to purchase the home was reasonable, and he appointed a special master to supervise the sale. He also fined Nia for not communicating with Robert about the sale.

Margullis also resolved disputes regarding several personal property items. An appraiser had valued all the household items, and Margullis resolved disputes including, for example, how nightstands would be divided and the details of selling farm equipment.

Finally, Margullis reviewed the proposed final pleadings submitted by each party. He generally adopted Nia's drafts, but in some instances made corrections or adopted specific language from Robert's proposal. For example, Margullis addressed arrearages on the first mortgage incurred after the separation. Margullis also required that each party submit a list of appraised personal property that he or she intended to keep so it could be accounted for in the final division of property. While the final pleadings that Margullis adopted did not calculate specific distributions, the pleadings directed how debts would be paid or divided, how assets and proceeds from the sales of the home and personal property would be divided, and the distribution of other assets. Thus, the arbitrator's decision effectively directed how the asset and debt distribution calculations should occur.

C.    Trial Court Proceedings

Nia then filed a motion with the superior court seeking an expedited order confirming the arbitration award and appointing a special master for the sale of the home. A Pierce County Superior Court commissioner granted Nia's motion. According to the commissioner's order, the special master was to complete the closing of the pending sale of the home and deposit the "net proceeds of sale upon said closing in the trust account of Petitioner's attorneys of record pending allocation by further court order." Suppl. CP at 182. Robert signed this order, approving only "as to form." Suppl. CP at 184.

4

The commissioner's order set a hearing before a superior court judge for the purpose of entering final pleadings that would include an order dividing proceeds from the sale of the home, as well as other property. At this hearing to address final pleadings, Robert argued that there were unresolved "issues with regard to allocation of funds between the parties," which he attributed, at least in part, to the fact that the home sale had not yet closed. Verbatim Report of Proceedings (VRP) (Sept. 21, 2018) at 9-10.

Recognizing Robert's concern that the sale had not yet closed, the trial court continued the hearing until after the home sale actually closed. The trial court ordered Robert to file specific objections to Nia's proposed final orders, stating, "Mr. Collins needs to specifically address what his issues are, rather than the more general declaration he filed with the Court, so that I have some sense as to whether there is a genuine issue or not." *Id.* at 17.

Robert then filed a motion to compel arbitration. In an accompanying declaration and memorandum, Robert described several issues he believed constituted disputes necessitating further arbitration. Robert asserted that (1) the family home had not sold at the time Nia filed her redrafted final pleadings for entry with the trial court, (2) Nia did not properly disclose the amount of her mortgage arrearages, (3) Nia did not accurately provide the amount of postseparation community debt, and (4) Nia's proposed final pleadings did not account for all the property Robert intended to retain. Robert argued that "the parties are unable to agree to the provisions in the final divorce decree" and that "prior to submission of the agreed and signed final pleadings to the court for signature and entry this matter must be resolved in arbitration as provided by the parties' arbitration agreement." CP at 158.

5

The home sale closed and yielded $409,080 in net proceeds prior to the agreed payment of or reimbursement for community debts. At the rescheduled hearing a few days later, Robert argued that the trial court was not authorized to enter any final pleadings because the arbitrator had not specified the precise dollar amounts allocated to each party. Without the arbitrator approving the final allocation of funds, Robert argued, the trial court had no authority to enter *any* final pleadings and/or allocate *any* proceeds from the home sale.

The trial court entered an order denying Robert's motion to compel arbitration, finding the final pleadings submitted by Nia's counsel "an appropriate reflection" of the parties' CR 2A agreement and the arbitration award. VRP (Sept. 28, 2018) at 24. Recognizing, however, that Robert did raise some issues that needed to be resolved by the arbitrator, the trial court determined that it was "appropriate to hold back a portion" of the proceeds of the sale allocated to each party until after the unresolved issues were arbitrated. *Id.* The trial court noted it was denying Robert's motion to compel arbitration "to the extent that there will be arbitration in advance of the entry of this order. Arbitration is available to address the issues of the holdback . . . [w]hich is the amount that you've been arguing about and [Robert] had issues with." *Id.* at 25-26. The trial court instructed the parties to "[t]ake [the amount of the holdback] to Mr. Margullis and figure that out." *Id*. at 26.

The trial court then entered findings of fact and conclusions of law and a final dissolution order consistent with the arbitrator's prior decision. In its final order, the trial court allocated responsibility for debt between the parties and then distributed net assets by allocating proceeds from the sale of the home, distributing personal property between the parties, and allocating

proceeds from the sale of other items of personal property, as directed by the arbitrator. The trial court awarded $232,396 from the proceeds of the home sale to Nia and $136,807 to Robert.

The trial court's order also identified a few specific unresolved issues involving community debt and personal property setoffs that required additional arbitration. In light of these unresolved issues, the trial court's dissolution order held back $20,000 "from each party's share of the remaining proceeds" pending further arbitration. CP at 176.

Robert appeals from the trial court's order, arguing that the trial court should not have entered any final pleadings and instead should have sent the entire case back to the arbitrator.

ANALYSIS

A.      Denial of the Motion to Compel Arbitration

        1.   Law favoring enforcement of arbitration clauses

CR 2A governs agreements between two parties "made by parties or attorneys 'in respect to the proceedings in a cause.'" *In re Marriage of Ferree*, 71 Wn. App. 35, 39, 856 P.2d 706 (1993 (quoting CR 2A). "The purpose of CR 2A is to give certainty and finality to settlements." *Condon v. Condon*, 177 Wn.2d 150, 157, 298 P.3d 86 (2013). When the contract concerns an arbitration agreement, we "determine the arbitrability of the dispute by examining the arbitration agreement between the parties," and we review "questions of arbitrability de novo." *Davis v. Gen. Dynamics Land Sys.*, 152 Wn. App. 715, 718, 217 P.3d 1191 (2009). The burden of showing that an arbitration agreement is unenforceable is on the party opposing arbitration. *Townsend v. Quadrant Corp.*, 173 Wn.2d 451, 455, 268 P.3d 917 (2012).

RCW 7.04A.060 governs the enforceability of arbitration agreements. Under RCW 7.04A.060(1), "[a]n agreement contained in a record to submit to arbitration any existing or

7

subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract." RCW 7.04A.060(2) establishes that a "court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate." RCW 7.04A.070 governs motions to compel or stay arbitration. RCW 7.04A.070(3) prohibits a court from refusing to order arbitration on the grounds that the court determines a "claim subject to arbitration lacks merit or grounds for the claim have not been established."

We have observed, "If we can fairly say that the parties' arbitration agreement covers the dispute, the inquiry ends because Washington strongly favors arbitration." *Davis*, 152 Wn. App. at 718. There is a presumption that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Kamaya Co., Ltd. v. Am. Prop. Consultants, Ltd.,* 91 Wn. App. 703, 714, 959 P.2d 1140 (1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 7 L. Ed. 2d 765 (1983)). Trial courts are empowered under RCW 7.04A.060(2) to determine "'whether . . . a controversy is subject to an agreement to arbitrate.'" *Saleemi v. Doctor's Assocs., Inc.*, 176 Wn.2d 368, 376, 292 P.3d 108 (2013) (quoting RCW 7.04A.060(2)). But the court must "limit its inquiry to the question of whether that dispute falls within the scope of the parties' agreement to arbitrate." *In re Marriage of Pascale*, 173 Wn. App. 836, 838, 295 P.3d 805 (2013); *see also* RCW 7.04A.070(3).

In *Pascale*, the disputed issue was whether the spousal maintenance provision of the parties' CR 2A agreement required four years or eight years of spousal support. 173 Wn. App. at 840. The husband argued the provision covered four years, while the wife argued it required eight years of support. *Id.* The trial court found the spousal support provision in the CR 2A agreement

"'[was] clear on its face,'" that it provided for eight years of support, and that because the CR 2A agreement clearly supported the wife's argument, there was no need to send the issue to the arbitrator. *Id.* at 843. Division One reversed, holding that the trial court "improperly examined the merits of the controversy," rather than simply assessing whether the disputed issue fell within the scope of the arbitrator's authority to resolve disputes according to the parties' CR 2A agreement. *Id.* Thus, even where resolution of a dispute seems simple, if the issue is covered by an arbitration clause, Washington courts must refer the issue to arbitration rather than deciding the issue on the merits.

### 2. Alleged disputes necessitating arbitration

To the extent any dispute over the drafting of final pleadings existed, Robert's and Nia's CR 2A agreement unambiguously required such a dispute to be resolved through binding arbitration. Not only is there is a general preference in Washington for enforcing arbitration agreements in these contexts, *see id.* at 842, but the specific language of Robert's and Nia's CR 2A agreement makes clear that the parties intended their CR 2A agreement to be a "full and final settlement of all claims" in their case. CP at 87. The CR 2A agreement also stated clearly that disputes over "the final documents or as to reserved or omitted issues," and subsequent disputes that arose "in construing, implementing or effectuating this Agreement," were to be resolved in binding arbitration by Margullis. CP at 87, 94.

The parties disputed the content of their final pleadings, and they submitted these disputes to Margullis for resolution. Margullis then issued a very detailed ruling with precise instructions for resolving the disputed issues. He also provided specific instructions for how the parties were to draft final pleadings, as well as how final distributions should be calculated.

The issue in this case, however, is whether unresolved disputes continued to exist when the trial court entered final pleadings on September 28, 2018, and whether the trial court overstepped its authority by deciding issues that should have been left to the arbitrator. For the following reasons, we hold that the issues Robert identifies either were not actually in dispute at the time of the trial court's ruling because the arbitrator had already resolved them, or the trial court properly reserved them for arbitration and accounted for them in its holdback. [2]

    i.   Closing date for sale of family home

Robert identified consequences arising from his uncertainty over the closing date of the home sale as one of the unresolved issues. We hold that the trial court properly found that the issue of the home sale closing date was moot by September 28, 2018 because the sale closed on September 25, 2018.

To the extent Robert argues that he failed to pay the second mortgage for the month of September because Nia did not update him about the closing date, and to the extent this created an unresolved issue about who was responsible for September's second mortgage payment, the trial court properly reserved this issue for arbitration. The trial court's final dissolution order provided that "[a]ny setoff from [Robert's] share of the home sale proceeds due to any failure to pay timely the second mortgage, including late fees, *shall be resolved through arbitration under the terms of the CR 2A Agreement*." CP at 174 (emphasis added).

---

[2] Nia's counsel agreed at the hearing that there were a few specific issues that remained for arbitration, and the order that the trial court signed contemplated future arbitration on those issues, rather than resolving them.

ii. Mortgage arrearages

Robert argues that Nia did not include in the final pleadings the full amount of her arrearages for missed mortgage payments that she was responsible for on the couple's first mortgage, nor did she include penalties for late payments. We hold that no unresolved issue existed with regard to the amount Nia owed for missed payments on the first mortgage.

In his ruling on the parties' proposed final pleadings, the arbitrator ordered that to the extent Nia failed to make payments on the first mortgage, "she will reimburse Mr. Collins for one-half of those arrearages out of her . . . home sale proceeds for all delinquent months through . . . August 2018. . . . [A]dditional arrearages will be paid out of gross home sale proceeds." CP at 150. Employing the arbitrator's language, the trial court required Nia to "reimburse [Robert] for one-half of those arrearages out of her share of net home sale proceeds for all delinquent months *through the month of September 2018*." CP at 173 (emphasis added). The trial court ordered that "[t]he total of arrearages and *late fees* through September 30, 2018 are $29,678.52 of which $15,766.29 shall be paid to [Robert] from [Nia's] share of the net home sale proceeds." *Id.* (emphasis added).

The trial court did not err by finding that there were no arbitrable issues with regard to Nia's arrearages. The trial court simply adopted the provision regarding arrearages that the arbitrator had ordered in his ruling. To the extent the trial court's order differs from the arbitrator's order by extending Nia's obligation to pay arrearages through September because of the timing of the home sale, we recognize that this change simply accounts for the delay in closing and ensures that the parties remained in the same position the arbitrator put them in when he issued his ruling, believing the sale would close on August 31, 2018. No further arbitration is necessary on this issue.

iii. Postseparation community debt and personal property setoffs

Robert argues that incomplete information about the amount of his and Nia's postseparation debt was an issue requiring arbitration. We conclude that the trial court properly reserved the issues of Nia's and Robert's postseparation community debt and personal property setoffs for arbitration.

The trial court's final order states that "any dispute as to the community or post-separation personal charges . . . shall be submitted to binding arbitration as per the terms of the CR 2A Agreement." CP at 170. Accordingly, to the extent the issue of postseparation debt was an unresolved issue, we hold that the trial court properly reserved this issue for arbitration.

Similarly, to the extent Robert argues that a dispute existed with regard to the retention, sale, and value of personal property, the trial court contemplated additional arbitration of any disputes around the sale and setoff value of the parties' personal property. *See* CP at 176 (Holdback was contingent on "arbitration to resolve the remaining issues of debt payment and *personal property setoffs*." (emphasis added)). The trial court did not err in reserving these issues for future arbitration.

iv. Holdbacks

Robert argues that "nothing in the arbitration agreement allow[ed] for holdbacks." Reply Br. of Appellant at 3. We hold that the trial court did not err when it held back a portion of the proceeds of the home sale from each party's share pending resolution of remaining disputed issues in arbitration.

The trial court's reasoning for holding back $20,000 from each party's portion of the remaining proceeds from the sale of the home was to allow the arbitrator to resolve "the remaining

issues of debt payment and personal property setoffs." CP at 176. The CR 2A agreement did not state that the existence of a single disputed issue would prevent the trial court from entering a final order as to issues that were not in dispute; rather it provided a mechanism for the arbitrator to resolve *individual* unresolved issues as they arose. The trial court's holdback promoted and facilitated arbitration of the remaining disputed issues while also allowing the prompt entry of the dissolution order. The trial court did not err in requiring the holdbacks.

The trial court also did not err when it determined that none of the issues Robert raised warranted arbitration before the final dissolution could be entered.

### 3. Grounds for trial court's denial of Robert's motion to compel arbitration

The trial court did not err by denying Robert's motion to compel arbitration before entering the final order of dissolution. The scope of the trial court's review was within the trial court's authority under RCW 7.04A.060(2) and applicable case law. *See Saleemi,* 176 Wn.2d at 376; *Pascale*, 173 Wn. App. at 842. For example, in its oral ruling on Robert's motion, the trial court explained that the order it entered reflected the parties' CR 2A agreement and the resulting arbitration award. The trial court also found that Robert had not identified any aspect of the proposed order that deviated from the arbitration decision. Because the trial court's order was consistent with the arbitrator's prior decision, the trial court properly denied Robert's motion to compel arbitration.

### B. Trial Court's Findings of Fact and Conclusions of Law and Final Dissolution Order

#### 1. Entry of the findings of fact, conclusions of law, and order before further arbitration

Robert argues that for the same reasons he believes the trial court erred when it denied his motion to compel arbitration, the trial court erred by entering findings of fact and conclusions of

law and the final dissolution order without first sending the remaining issues back to the arbitrator for resolution. For the reasons explained above, however, we hold that the trial court did not err by entering a final dissolution order, accompanied by findings of fact and conclusions of law that reflected the arbitrator's property division. The holdbacks ensured that there was sufficient funding to resolve all remaining issues without unnecessarily delaying entry of the trial court's findings and conclusions and dissolution order.

    2.   Distribution of property in the dissolution order

Robert argues that the trial court erred by "distributing property . . . without making findings of fact and conclusions of law supporting the distribution." Br. of Appellant at 11. We hold that the trial court's distribution of property in its final dissolution order was supported by adequate findings of fact and conclusions of law and that the trial court's findings and conclusions of law were supported by substantial evidence.

Under CR 52(a)(2)(B), a trial court's judgment in a dissolution proceeding must be supported by findings of fact and conclusions of law, which must be "sufficient to suggest the factual basis for the ultimate conclusions." *In re Marriage of Lawrence,* 105 Wn. App. 683, 686, 20 P.3d 972 (2001). If the trial court made such findings of fact and conclusions of law, we consider only whether substantial evidence supports the findings and whether the findings support the conclusions. *In re Marriage of Greene,* 97 Wn. App. 708, 714, 986 P.2d 144 (1999).

"'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). The party challenging a finding of fact bears the burden of showing it is not supported by substantial evidence. *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 939-40, 845

P.2d 1331 (1993). Disputed evidence is still substantial if it presents "'any reasonable view [that] substantiates [the trial court's] findings, even though there may be other reasonable interpretations.'" *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 713, 732 P.2d 974 (1987) (alterations in original) (quoting *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 501, 663 P.2d 132 (1983)).

       i.   Sufficiency of the findings of fact and conclusions of law

Robert contends that the findings of fact and conclusions of law regarding the distribution of property and debt were insufficient because each "simply lists that the property and debt is set forth in the Final Divorce Order" and because "[e]ach conclusion is that the division of the property and debt is fair (just and equitable)." Br. of Appellant at 11. We disagree.

The trial court's findings of fact were "sufficient to suggest the factual basis for [its] ultimate conclusions." *Lawrence*, 105 Wn. App. at 686. The trial court explicitly noted that the "[b]asis for [its] findings and conclusions" was the "[s]pouses' agreement reached at mediation in the form of a written CR 2A Agreement . . . clarified and confirmed by [the] Arbitration Award issued by Arbitrator Norm Margullis." CP at 162. As Robert himself agrees, the trial court was bound by the arbitrator's decision.

We also hold that the trial court's conclusions of law, stating that the provisions regarding distribution of property were just and equitable, were supported by these factual findings. The trial court's final order was comprised of the final pleadings that Nia submitted. The trial court did not err in finding these final pleadings just and equitable because they reflected the terms of the CR 2A agreement, which the parties themselves agreed to, and the arbitrator's ruling, to which the parties agreed to be bound.

ii. The trial court's allocation of remaining home sale proceeds

Robert argues that the trial court erred in its final dissolution order when it awarded Nia $232,396 and awarded Robert $136,807 out of the home sale proceeds held in Nia's lawyer's trust account "without further elaboration." Br. of Appellant at 12. To the extent Robert is arguing that the trial court's calculation is not supported by substantial evidence, we disagree. We hold that Robert has not met his burden to show that the trial court's award was not supported by substantial evidence.

Robert has not shown that the trial court's order departed from the arbitrator's ruling as to how the final order should be drafted. Nia submitted a declaration containing a detailed reconciliation listing precisely what portion of the home sale proceeds was to be allocated to pay off community debt, the value of setoffs for property retained by Robert, and the value of debits from Nia back to Robert to account for debts, expenses, and other terms assigned to her under the CR 2A agreement and the arbitrator's decision. Nia's reconciliation is supported by exhibits confirming the figures she relies on.

Robert has not taken issue with any of the specific terms or calculations in Nia's reconciliation. Robert never offered contradictory evidence suggesting that the money should be allocated differently. He did not explain why the trial court's findings of fact were not supported by substantial evidence nor did he explain how the trial court's findings did not support its conclusions of law. Finally, he did not explain how any of the calculations conflicted with the arbitrator's decision, except for those things discussed above that the trial court expressly reserved for future arbitration. Moreover, the trial court's order contemplated that any remaining unresolved issues would be arbitrated and could be addressed using the holdback funds.

Robert has not shown that the calculations that the trial court adopted lacked support, nor has he shown that they conflicted with the parties' agreement or the arbitrator's decision.

C.      The Arbitrator's Future Involvement in This Case

Robert argues that the trial court erred because it "modified the parties' [CR 2A] agreement by limiting the arbitrator's future role" in his and Nia's disputes. Br. of Appellant at 13. But the trial court did not limit the arbitrator's future role in resolving disputes between the parties.

Robert argues the following statements in the trial court's dissolution order constitute limitations on the arbitrator's future role:

- "Any dispute as to the community or post-separation personal charges . . . shall be submitted to binding arbitration as per the terms of the CR 2A Agreement." CP at 170.
- "[A]ny disputes with respect [to debt collection] shall be resolved in arbitration under the terms of the CR 2A Agreement." CP at 174.
- "The sum of $20,000.00 from each party's share of the remaining proceeds . . . shall be held in the trust account of Petitioner's attorney . . . pending arbitration award to resolve the remaining issues of debt payment and personal property setoffs." CP at 176.

These provisions do not limit the arbitrator's involvement in future disputes between the parties. The CR 2A agreement states, "Any disputes in drafting of the final documents or as to reserved and/or omitted issues shall be resolved by Norm Margullis in binding arbitration." CP at 87. By identifying the areas above as disputes that needed to be resolved by the arbitrator, the trial court did not limit Margullis's involvement, because the trial court's final order never suggested that the arbitrator had authority to resolve those issues *to the exclusion of any other issues* that might arise. Rather, the trial court flagged the unresolved issues that comprised the basis of its $20,000 holdback from each party's share of the home sale proceeds.

17

D.      Robert's Request for Attorney Fees

Robert argues that the trial court erred under RCW 26.09.140 when it denied Robert's motion for attorney fees. We disagree and hold the trial court did not abuse its discretion.

Under RCW 26.09.140, a trial court may, "after considering the financial resources of both parties" choose to award fees and costs to one party. "We review statutory attorney fee award decisions for an abuse of discretion." *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). We defer to discretion of the trial court unless its decision was untenable or manifestly unreasonable. *Id.*; *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

RCW 26.09.140 instructs the trial court to balance the financial need of both parties. "'The purpose of the statutory authority [to award fees and costs] is to make certain that a person is not deprived of his or her day in court by reason of financial disadvantage.'" *In re Marriage of Burke*, 96 Wn. App. 474, 479, 980 P.2d 265 (1999) (quoting 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 40.2, at 510 (1997)). Courts may also look outside the statute to award fees and costs on an equitable basis. "A party's intransigence can substantiate a trial court's award of attorney fees, regardless of the factors enunciated in RCW 26.09.140." *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999).

The trial court did not abuse its discretion by declining to award attorney fees to Robert. The trial court could reasonably have concluded that neither party's economic need substantially outweighed the other's. The fact that the arbitrator never ruled that one party had greater financial need than the other supports the trial court's decision not to award either party fees or costs under RCW 26.09.140 based on financial need. In addition, Nia did not act with intransigence in

18

requesting the trial court to enter her final pleadings. We therefore affirm the trial court's decision to deny Robert's request for attorney fees and costs.

E.        Attorney Fees on Appeal

On appeal, both parties request attorney fees under RAP 18.1(a) and RCW 26.09.140. We decline to award attorney fees to either party. Under RCW 26.09.140, this court has discretion to award reasonable costs and attorney fees to either party on appeal "after considering the financial resources of both parties." We balance "the financial need of the requesting party against the other party's ability to pay." *In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014). Noting that the CR 2A agreement contemplates an equalized distribution of community assets and debts, we find no disparity in the financial resources of Nia and Robert sufficient to warrant awarding fees and costs to either party.

Nia also argues that she is entitled to sanctions in the form of attorney fees under RAP 18.9(a) because Robert's appeal was frivolous. While we affirm the trial court's denial of Robert's motion to compel arbitration and its entry of its findings, conclusions, and order, we do not find that he was intransigent or that his appeal was so "devoid of merit" as to warrant imposing sanctions in the form of ordering him to pay Nia's attorney fees. *See In re Marriage of Schnurman*, 178 Wn. App. 634, 644, 316 P.3d 514 (2013).

CONCLUSION

We affirm the trial court's denial of Robert's motion to compel arbitration. We affirm the trial court's findings of fact, conclusions of law, and final order of dissolution. We decline to award attorney fees on appeal.

No. 52787-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Melnick, J.